**Rafael S. ROMAN**

v.

**REYNOLDS METALS CO. and Aluminum Workers Local 235.**

**Civ. A. No. 70–C–162.**

United States District Court,
S. D. Texas,
Corpus Christi Division.
March 5, 1973.
Order April 7, 1973.

48

Jim Heidelberg and John E. Serna, Mexican-American Legal Defense Fund San Antonio, Tex., James DeAnda, Corpus Christi, Tex., for plaintiff.

William H. Keys, Corpus Christi, Tex., for defendant Reynolds Metals.

L. DeWitt Hale, Corpus Christi, Tex., for defendant Aluminum Workers Local 235.

## MEMORANDUM

OWEN D. COX, District Judge.

Plaintiff, Rafael Roman, instituted this suit against Reynolds Metals Company and Aluminum Workers Local 235, under Title VII of the Civil Rights Act of 1964, 42 U.S.C., § 2000e et seq. The matter was tried on this issue of liability before the Court on March 22 and 23, 1972. At the conclusion of the trial, the Defendant Aluminum Workers of America, Local 235, was dismissed from this action. However, the liability of Reynolds Metals Company must be now determined by the Court.

Plaintiff, a Mexican-American, seeks injunctive relief, a declaratory judgment, lost wages, attorney's fees, and costs for himself and on behalf of the class consisting of persons similarly situated as a result of alleged discrimination in the hiring practices of the remaining Defendant, Reynolds Metals Company (called Reynolds). The class consists of all those Mexican-Americans who sought employment and were otherwise qualified for employment with Reynolds Metals Company, but who were not employed because they did not meet that company's educational requirement of a high school diploma or the equivalent. The class includes approximately 129 persons.

It was agreed by the parties that the scope of this lawsuit was limited to the Reynolds Metals Company's Sherwin Plant located at Ingleside, Texas, a community near the Corpus Christi metropolitan area. A large proportion of the Sherwin Plant work force resides in Corpus Christi.

On or about February 21, 1969, Plaintiff Roman applied for employment at said Sherwin Plant as a welder. At this time, Reynolds required, as a condition for employment for every job category, that an applicant possess a high school diploma or its equivalent. Plaintiff sat-

isfactorily completed a practical welding examination administered by Defendant Reynolds, but did not meet the educational requirements of said Defendant and, although a vacancy existed, he was not hired.

The Defendant Reynolds instituted its educational requirement policy in 1957 and discontinued it in May, 1971. During the time the policy was in effect, Reynolds made no effort to determine whether there was any correlation between the educational requirement and an employee's ability to satisfactorily perform his assigned job tasks. The policy of disqualifying persons without a high school diploma or its equivalent was objectively applied without regard to race, color, religion, sex, or national origin.

The Defendant Reynolds currently employs several persons in various departments who do not possess a high school diploma or its equivalent and those persons were in the employ of Reynolds at the time the Plaintiff Roman applied for employment. When those employees were hired is not reflected in the record, but for our purposes here we'll assume they were hired prior to the effective date of the questioned educational requirements. The job performance of those employees at the Sherwin Plant who do not meet the educational requirement is satisfactory.

While the Defendant Reynolds or its representatives may not have been precisely aware that Mexican-Americans generally did not complete high school at the same rate as Anglo-Americans, from 1965 until May of 1971, the Personnel Director of the Defendant company had been informed by his subordinate personnel that Mexican-Americans were disqualified for employment at a higher rate than others because of the educational requirement.

Based upon census data of the 1960 Census of the United States, the following educational achievement levels were established for persons twenty-five years of age and over in Corpus Christi, Texas, and the State of Texas:

Corpus Christi

| | |
|---|---|
| Anglo | 12.2 years |
| Mexican-American | 4.5 years |
| Negro | 8.0 years |

State of Texas

| | |
|---|---|
| Anglo | 11.5 years |
| Mexican-American | 4.8 years |
| Negro | 8.1 years |

As reported by the United States Commission of Civil Rights and published in October, 1971, 47% of the Mexican-American school children in the State of Texas do not graduate from high school, while, correspondingly, 15% of the Anglo school children do not graduate.

During the period from 1967 to July, 1971, 4,619 persons applied for jobs at the Defendant company's Sherwin Plant, and of those applicants, 1,580 were Spanish surnamed. Of the 3,039 non-Spanish surnamed applicants, 155 did not possess a high school diploma, while 161 of the Mexican-Americans did not meet the educational requirement. Thus, 10.2% of the Mexican-American or Spanish surnamed applicants were automatically disqualified from employment with Reynolds, while 5.1% of all others were disqualified for failing to meet the educational requisite.

This Court is satisfied the educational requirements here questioned were not prompted by an intent of the Defendant to discriminate. The Court is aware that the Defendant company has taken affirmative action to recruit minority group employees and to avoid discrimination in hiring. The Defendant company participates in a Federal program, "Plan for Progress," and other equal employment programs. Those programs have accomplished some results to even up the work force. This becomes apparent when the statistics are reviewed. The percentage of non-Anglo (both Negro and Mexican-American) employees in the work force has increased from 24.9% in 1964 to 41.6% in 1971. In

January of 1972, slightly more than 21% of all the hourly employees were Mexican-Americans, and 19.6% of total employees were Mexican-Americans. Approximately 50% of the population in the Corpus Christi area is Mexican-American. Among newly hired hourly employees, the percentage of Mexican-Americans hired from among the applicants has risen steadily from 28% in 1967 to 75% in 1971. Among job applicants from January 1, 1970, to January 1, 1971, 67% of the applicants were Anglo and 30% were Mexican-American. Of the newly hired employees, 61% were Anglo, whereas 35% were Mexican-American. These efforts on the part of the Defendant Reynolds are highly laudable.

■ The Defendant Reynolds contended that the policy was related to a justifiable business reason because it upgraded the overall quality of the company's work force and facilitated advancement and progression within the plant. The law makes it impermissible to impose such an educational requirement unless it is job related or a bona fide business necessity; and it is not sufficient, as the Defendant company contends, merely to maintain a high quality of personnel or to ease advancement. Griggs v. Duke Power Company, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). "[The] discrimination exists even though [the] policy [was] objectively and fairly applied as between applicants of various races. A substantial and disproportionately large number of [Mexican-Americans] are excluded from employment opportunities by Defendant's policy." Gregory v. Litton Systems, Inc., 316 F.Supp. 401, 403 (C.D.Cal.1970). The Plaintiff need not show an intent to discriminate against a particular group, but only that the policy was knowingly instituted. United Papermakers and Paperworkers v. United States, 416 F.2d 980 (5th Cir. 1969). The Fifth Circuit has already said, in Cisneros et al. v. Corpus Christi Independent School District, 467 F.2d 142 (5th Cir. 1972), that the Mexican-Americans in South Texas are an identifiable minority which has been subjected to discrimination in the past, but there is nothing in this record to indicate their educational opportunities over the past years have been grossly inadequate, as the Supreme Court in Grigsby said about the Blacks. The large number of successful business and professional persons among the Mexican-Americans in this area weigh against any assumption to that effect. And, the statistics previously cited, that is, 10.2% Mexican-American or Spanish-surname applicants, were disqualified, as compared to only 5.1% of all others, does not indicate that a "substantial and disproportionately large number" of Mexican-Americans were excluded from employment. However, it is to be expected these distinctions will cause the Fifth Circuit no concern. The educational requirement here questioned has, in effect, served to discriminate.

■ The Defendant Reynolds has voluntarily discontinued the policy of requiring applicants for employment to possess a high school diploma or its equivalent regardless of the position applied for. There is ample indication that Reynolds is now actively working to even up the work force. In view of this evidence, no injunction seems necessary or appropriate. While the Court realizes that this voluntary action may not be totally sufficient, United States v. W. T. Grant Company, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); Jenkins v. United Gas Corporation, 400 F.2d 28 (5th Cir. 1968), Title VII aims at securing voluntary compliance with the requirement of equal employment opportunity. Therefore, Defendant Reynolds Metals Company will not be enjoined, at this time, from employing or enforcing the educational requisite already abandoned, but this Court will retain continuing jurisdiction of this cause for a period of two (2) years from the date of this order. Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8th Cir. 1970). However, Defendant Reynolds Metals Company is ordered to reinstate the employment applications of the Plaintiff Roman

and the identifiable members of the class he represents, and to give these applicants for employment, if otherwise qualified for the position sought, priority consideration for the positions originally applied for, as openings occur.

Nothing heretofore mentioned by way of declaratory or injunctive relief is intended by the Court to prohibit the Defendant company from requiring a high school diploma or its equivalent of applicants for managerial or technical positions, or any other position where that educational requisite may be a bona fide job-related requirement or a business necessity. This constitutes a final order with respect to the matters considered and ruled upon.

A hearing to determine the extent of individual damages and attorney's fees appropriate in this case will be set at a future date.

### ORDER

In this Title VII Civil Rights Act suit [42 U.S.C., § 2000e-2(a)], the Defendant Reynolds Metals Company has moved for a new trial, reurging that this is not a proper suit for the application of Rule 23, Federal Rules of Civil Procedure, and that various members of the Plaintiff class would have been disqualified for various reasons other than the Defendant's educational requirement policy.

Both of the contentions in the Defendant's motion for new trial have been considered by the Court previously, and, as they raise no new points, the Defendant's motion is hereby denied.

The Defendant Reynolds urges that to find a violation of the Act (Civil Rights Act of 1964), there must be a discriminatory effect before the issue of job relatedness is reached. In its memorandum of March 5, 1973, the Court held, "The educational requirement here questioned has, in effect, served to discriminate." While a number of the members of the Plaintiff class may not have been employed by the Defendant notwithstanding the educational requirement, it appears that this would more properly relate to the issue of monetary damage which may have been incurred by the various individuals who constitute the class. The fact of the matter is that those who were not hired were informed that they were ineligible for employment for having failed to meet the educational requirements of the Defendant Reynolds, and the Defendant's protests to the contrary carry the ring of afterthought.

The Defendant Reynolds has pointed out that the Court erred in finding 10.2% of Mexican-American applicants were excluded from employment when the proper proportion is 8.2%, based on the 129 identifiable members of the class. The Court's original memorandum of March 5, 1973, at page 4, is amended to reflect 8.2% rather than 10.2%. While this is not so "substantial and disproportionate" (Defendant's brief, page 2), it does not alter the result. Any discrimination, regardless of degree, is prohibited by the Act. Rowe v. General Motors Corp., 457 F.2d 348, 354 (5th Cir. 1972). Moreover, there is no way to ascertain the impact of the now invalid educational policy on those who did not apply for the reason that they did not hold a high school diploma or its equivalent.