Carolyn J. EVANS, Plaintiff-Appellant,

v.

UNITED AIR LINES, INC.,
Defendant-Appellee.

No. 75–1481.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1975.

Decided April 26, 1976.

Rehearing and Rehearing En Banc
Denied June 7, 1976.

Alan M. Levin, Chicago, Ill., for plaintiff-appellant.

Charles L. Reischel and Lutz Alexander Prager, Washington, D. C., for Equal Employment Opportunity Commission, amicus curiae.

Kenneth A. Knutson, Earl G. Dolan, Chicago, Ill., for defendant-appellee.

On Petition for Rehearing

Before CUMMINGS, ADAMS * and SPRECHER, Circuit Judges.

ADAMS, Circuit Judge.

This suit was brought by Carolyn J. Evans, under Title VII of the Civil Rights Act of 1964,[1] to recover seniority and back pay that she allegedly lost because of her separation from employment with United Air Lines. The complaint claims that United discriminated against Evans in February, 1968, when United, by reason of Evans' marriage, forced her to resign her employment as a stewardess. She also asserts, however, a continuing discrimination against her as a result of the current application of United's seniority policies, which consider only continuous time-in-service and thereby perpetuate the adverse effects of the original discriminatory discharge.

Evans was employed by United as a stewardess from November, 1966 until February, 1968, when she involuntarily resigned. During that period it was the policy of United that marriage disqualified a woman from continuing her employment as a stewardess. On November 7, 1968, United discontinued its policy of requiring stewardess-

---

* The Honorable Arlin M. Adams, Circuit Judge of the United States Court of Appeals for the Third Circuit, is sitting by designation.

1. 42 U.S.C. § 2000e et seq. (Supp. III 1973).

es to remain unmarried,[2] and on February 16, 1972, Evans was again hired as a new employee of United. She was provided stewardess training for newly hired employees, which she completed on March 16, 1972.

Evans filed a charge of discrimination with the EEOC on February 21, 1973—five years after her termination from employment, and more than four years after United eliminated its no-marriage rule. She had not filed any prior charge of discrimination with the EEOC, or with any other governmental agency, or in any way challenged United's no-marriage rule.

United took the position that a timely filing of a charge of discrimination with the EEOC is a jurisdictional prerequisite to filing a civil action under Title VII. *Choate v. Caterpillar Co.*, 402 F.2d 357, 359 (7th Cir. 1968). Therefore it moved to dismiss the complaint on the ground that Evans had failed to file a charge with the EEOC within ninety days of the alleged unlawful practice[3] which occurred in February, 1968, United claimed, when Evans was forced to resign as a stewardess and her employment and seniority were terminated.

The district court granted United's motion to dismiss the complaint on the ground that plaintiff "has not been suffering from any 'continuing' violation" and is "seeking to have the court merely reinstate the No-

vember, 1966 seniority date which was lost solely by reason of her February, 1968 resignation."

Evans brought this appeal. After argument, the Court affirmed the dismissal by the trial court, relying upon an interpretation of *Waters v. Wisconsin Steel Works.*[4] Petitions for rehearing by the panel and *en banc* were filed. Pending the consideration of those petitions, the Supreme Court decided *Franks v. Bowman Transportation Co.*[5] In view of the Supreme Court's decision, rehearing was granted by the panel on April 6, 1976. We now reverse and remand.

I.

Evans claims that a current employment practice or policy, though facially neutral, is unlawful if by its operation it enables prior discrimination to reach into the present, and thus prolongs the effect of such discrimination. She also contends that where the challenged employment practice is current and continuing, the usual procedural requirement of Title VII, that an EEOC charge "be filed within one hundred and eighty days after the alleged unlawful employment practice occurred," is inapplicable. Evans appears to argue that where the practice is a persistent one, a charge filed at any time during the continuance of the practice is *ipso facto* timely.

**2.** United, by letter agreement of November 7, 1968 with a collective bargaining agent, agreed to reinstate those stewardesses who had been terminated under the no-marriage rule and who had filed charges or grievances. Every stewardess desirous of reinstatement was required to make application within thirty days of notification of this agreement. Evans did not qualify for reinstatement under this agreement because she had not filed a prior charge of discrimination against United with the EEOC or any state agency, nor had she filed a grievance under the applicable collective bargaining agreement.

By an October 16, 1969 letter agreement, United undertook to reinstate those stewardesses who had transferred to ground positions because of the no-marriage rule and who were employed by United on that date. Evans acquired no right under the letter agreement of October 16, 1969 inasmuch as she had not transferred to a ground position and was not

an employee with United as of October 16, 1969.

United's no-marriage policy for stewardesses was held unlawfully discriminatory in *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194 (7th Cir.), *cert. denied*, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971).

**3.** Prior to the 1972 Amendments of the Civil Rights Act, 42 U.S.C. § 2000e–5(e) provided that in order to bring an action under this section, a person must file a charge with the EEOC within ninety days after the occurrence of the alleged unlawful employment practice.

**4.** 502 F.2d 1309 (7th Cir. 1974), *cert. denied,* —— U.S. ——, 96 S.Ct. 2214, 48 L.Ed.2d 823, 44 U.S.L.W. 3670 (U.S., May 24, 1976) (No. 74–1064).

**5.** —— U.S. ——, 96 S.Ct. 1251, 47 L.Ed.2d 444, 44 U.S.L.W. 4356 (U.S. March 24, 1976).

Her charge would not be timely and the jurisdictional prerequisites to a civil action would not be fulfilled under the Civil Rights Act, Evans concedes, unless her theory of a continuing violation is valid. Evans also concedes that United's current seniority policy is facially neutral with respect to sex,[6] and she does not contend that United still discriminates against females by reason of any current no-marriage policy. She does maintain however, that United's discriminatory termination in February, 1968 caused her to lose her seniority and, as a result of that termination in combination with United's on-going seniority policy, she suffers a discriminatory loss of seniority and related benefits, including pay, to the present date.

On the other hand, United asserts that the only legally cognizable injury to Evans was her termination of employment and seniority in 1968. In this respect, United's argument would appear to rest, *sub silentio,* on the protection afforded bona fide seniority systems by section 2000e–2(h). That section provides:

> Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority . . . system
> . . . .

Since it is agreed that United's continuous-time-in-service seniority system is facially neutral with regard to sex, the present application of the seniority policy to Evans is not a violation of Title VII, according to United. Rather, in their view of the case, any actionable injury to Evans stems from her termination in February, 1968, whereby she lost her initial seniority. And it was from such date that the time limit began to run and has long-since expired, with respect to any disadvantages in employment-related benefits.

United argues that if a discriminatory act is considered to continue for so long as there is some lingering effect, every alleged discriminatory act could be litigated at any time. A discrimination, United reasons, would never be final, despite the limitation period under section 2000e–5(e), since there might always be some lingering effects—monetary or otherwise.

## II.

The Supreme Court addressed the scope of the neutral-seniority-policy defense set forth in section 2000e–2(h) in *Franks v. Bowman Transportation Co.*[7] The Court in *Franks* was asked to determine whether Section 2000e–2(h) (section 703(h) of the Civil Rights Act of 1964) precluded the grant of retroactive seniority as a form of relief to job applicants who had not been hired because of racial discrimination. It held that such relief was appropriate, despite a facially neutral seniority policy, where the individual complainants could prove that they had been the actual victims of discriminatory hiring practices.[8] The decision was predicated upon the Supreme Court's conclusion that section 2000e–2(h) was intended to protect only those seniority rights that were established prior to the effective date of Title VII in 1965:[9]

> [W]hatever the exact meaning and scope of § 703(h) in light of its unusual legislative history and the absence of the usual legislative materials, . . . it is ap-

6. United's policy of crediting toward seniority only *continuous* time-in-service works to the disadvantage of rehired employees. A new employee who was hired in the interim between the former employee's termination and rehiring will have greater seniority than the rehired employee, although the new employee may have less total time-in-service. This policy would seem to be neutral, however, as between male and female employees.

7. 44 U.S.L.W. 4356 (U.S., March 24, 1976).

8. *Id.* at 4359, 4361, 4363. This Court's decision in *Waters v. Wisconsin Steel Works,* 502 F.2d 1309 (7th Cir. 1974), *pet. for cert. filed,* 44 U.S.L.W. 3037 (U.S., Feb. 24, 1975) (No. 74–1064), would not appear to be to the contrary. In *Waters,* the employees do not seem to have established a causal linkage between their inferior seniority status, which resulted in their lay-offs, and specific prior acts of discrimination directed at them personally.

9. *Id.* at 4360.

parent that the thrust of the section is directed toward defining what is and what is not an illegal discriminatory practice in instances in which the post-Act operation of a seniority system is challenged as perpetuating the effects of discrimination occurring prior to the effective date of the Act.

As the Supreme Court observed, Congress is well aware that employment discrimination is a "complex and pervasive phenomenon."[10] The House report on the Equal Employment Opportunity Act Amendments of 1972 notes that

> Experts familiar with the subject generally describe the problem in terms of "systems" and "effect" rather than simply intentional wrongs. The literature on the subject is replete with discussions of the mechanics of seniority and lines of progression, perpetuation of the present effects of earlier discriminatory practices through various institutional devices, and testing and validation requirements. . . . Particularly to the untrained observer, their discriminatory nature may not appear obvious at first glance.[11]

The Supreme Court reiterated in *Franks* that "in enacting Title VII of the Civil Rights Act of 1964, Congress intended to prohibit all practices in whatever form which create inequality in employment opportunity . . . ."[12]

"[O]ne of the central purposes of Title VII is 'to make persons whole for injuries suffered on account of unlawful employment discrimination,'" the Court said.[13] Therefore, it concluded that "[a]dequate relief may well be denied in the absence of a seniority remedy slotting the victim in that position of the seniority system that would

have been his had he been hired at the time of his application."[14]

### III.

█ It is in the context of the *Franks* decision that we must consider whether Evans' complaint was filed within 90 days of a violation of Title VII, thus affording jurisdiction to the district court. More specifically, the issue is whether section 2000e–2(h) may be used to interpose a legal bar to Evans' theory that the perpetuation of past discrimination through United's current seniority policy constitutes a continuing violation of her Title VII rights.

A seniority policy that credits only continuous time-in-service necessarily has an adverse impact on rehired employees who have more total time-in-service, but less continuous time-in-service, than newly hired employees. This disadvantaged class of rehired employees may include employees who were rehired subsequent to terminations that resulted from prior discriminatory practices. Evans claims to be an employee of the latter type.

It is apparent that United's continuous-time-in-service seniority program may put an employee who has been discharged and later rehired into an inferior seniority position than would have been the case if the employee had not been discharged and, thereby, perpetuates some of the disadvantages resulting from the prior discharge. If the prior discharge was itself a discriminatory one, then United's seniority policy is an instrument that extends the impact of past discrimination, albeit unintentionally. Consequently, the present application of United's seniority policy is deemed to be discriminatory. It has been held in a number of instances that a facially neutral seniority policy may be in violation of Title VII if its effect is to perpetuate the disadvantages accruing from prior discrimination.[15]

10. *Id.* at 4361 n. 21.

11. H.Rep. No. 92–238, 92d Cong., 1st Sess. (1971), *reprinted in* 1972 U.S.Code.Cong. & Admin.News, pp. 2137, 2144.

12. 44 U.S.L.W. at 4360.

13. *Id.*

14. *Id.* at 4361.

15. *Acha v. Beame*, 531 F.2d 648 (2d Cir. 1976); *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 236 (5th Cir. 1974); *United States v. N. L. Industries, Inc.*, 479 F.2d 354 (8th Cir. 1973); *Tippett v. Liggett & Meyers Tobacco Co.*, 316 F.Supp. 292 (M.D.N.C. 1970); *Healen v. Eastern Air Lines*, 8 FEP Cases 917 (N.D.Ga. 1973); EEOC Dec. No. 71–413, 3 FEP Cases 233 (1970). *See Griggs v. Duke Power Co.*, 401

■ The teaching of *Franks* confirms these holdings. Section 2000e–2(h) must be understood as relatively narrow, although necessary, exception to the Congressional intent to prohibit all practices of whatever form that create inequalities. It applies only to seniority rights vesting before the 1965 effective date of Title VII. United's seniority program, however, transmits into the present the disadvantages allegedly resulting from a 1968 discrimination. In these circumstances, section 2000e–2(h) cannot be used to erect a legal bar to Evans' claim that she is the victim of a current discrimination as a result of a present seniority practice that imposes upon her the effects of a past employment discrimination by United.

For the above reasons, we conclude that Evans' complaint, having been filed during the pendency of the alleged discrimination, was not time-barred. Accordingly, we reverse and remand the cause to the district court for action consistent with this opinion.

U.S. 424, 430, 91 S.Ct. 849, 853, 28 L.Ed.2d 158, 163 (1971), where the Supreme Court declared:

Under the Act, practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to "freeze" the status quo of prior discriminatory employment practices.