Genarina R. KENNAN and Renate Kerth, as Individuals, Plaintiffs,

v.

PAN AMERICAN WORLD AIRWAYS, INC., a New York Corporation, and Transport Workers Union of America, a Labor Organization, Defendants.

Nancy FYFE et al., Plaintiffs,

v.

PAN AMERICAN WORLD AIRWAYS, INC., et al., Defendants.

Nos. C–76–1245 WHO, C–76–1273 WHO.

United States District Court,
N. D. California.

Nov. 22, 1976.

Gerald E. Magaro, San Francisco, Cal., for plaintiffs.

Robert S. Venning, Peter S. Hecker, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for Pan Am.

Irwin Leff, Rosenthal & Leff, Inc., O'Donnell & Schwartz, New York City, for Transport Workers Union & Local 505, TWU.

William L. Ferdon, Robert W. Tollen, D. Wayne Jeffries, Chickering & Gregory, San Francisco, Cal., for plaintiffs.

## OPINION AND ORDER

ORRICK, District Judge.

Two groups of flight attendants bring these related, but as yet unconsolidated, suits under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) (Title VII) to recover seniority and back pay lost because of alleged discriminatory separation from employment with defendant Pan American World Airways, Inc. (Pan Am). Though plaintiffs did not file charges as required by 42 U.S.C. § 2000e–5(e) within the applicable limitations period subsequent to the alleged discriminatory separations, they claim that Pan Am's Title VII violations are "continuing" in nature and that, therefore, their suit is still timely. Pan Am contends that the alleged violations are not "continuing" and brings these virtually identical motions to dismiss against plaintiffs in *Fyfe*, a class action, and against plaintiffs in *Kennan*, a suit by two individuals.

Prior to 1971 Pan Am maintained a policy under which flight attendants were required to resign upon becoming pregnant. In April, 1971, this policy was discontinued. Furthermore, starting in December, 1972, Pan Am adopted the policy of offering to reemploy flight attendants who had previously been required to resign for reasons of pregnancy on or after July 2, 1964. This new policy included crediting such rehired personnel with the seniority they had accumulated prior to their resignation, along with a ninety-day credit for the period during which they were not employed by the company. This ninety-day credit is identical to and part of the general policy of Pan Am with respect to leaves of absence from the company which are taken by its flight attendants for other than medical reasons.

The related actions now before the Court were brought by flight attendants originally forced to resign under Pan Am's pre-1971 policy, yet rehired under Pan Am's new policy. Plaintiffs seek to recover full seniority and back pay allegedly lost as a result of the original forced terminations.

*Fyfe* is a class action suit filed by six named plaintiffs, all of whom were initially employed as flight attendants by Pan Am between 1959 and 1966, all of whom were required to resign due to pregnancy between 1964 and 1969, and all of whom have now been rehired (one in June, 1973, and the rest in August, 1974). The forced resignations of two of the six *Fyfe* plaintiffs occurred prior to the effective date of Title VII (July 2, 1965).

*Kennan* is a suit by two individual flight attendants who, in most relevant respects, would fit within the *Fyfe* class. Both were originally hired by Pan Am prior to 1964, were terminated upon becoming pregnant in 1966, and were rehired in August, 1974.

### I.

It is a prerequisite for commencement of a court action under Title VII that an aggrieved person not utilizing a state remedy file timely charges of discrimination with the Equal Employment Opportunity Commission (EEOC). 42 U.S.C. § 2000e–5(e). Initially, charges were required to be filed within ninety days of the alleged unlawful act of discrimination. In 1972 the statute was amended to allow one hundred eighty days.[1]

It is undisputed that plaintiffs here failed to file charges with the EEOC within ninety days of their original forced resignations. The *Fyfe* plaintiffs filed charges for the first time in mid-1975 and the *Kennan* plaintiffs in late 1974. On this basis, Pan Am has brought the motions to dismiss which are now before the Court. Pan Am argues that its unlawful acts of discrimination, for the purposes of 42 U.S.C. § 2000e–5(e), were the original, pregnancy-based

terminations, and that reinstatement of plaintiffs without full retroactive seniority did not constitute a new discriminatory act or acts; rather, it was merely an application of Pan Am's current, facially neutral seniority system. Thus, Pan Am contends that plaintiffs' failures to file EEOC charges within ninety days of the original forced terminations render their suits barred by the Title VII "statute of limitations". 42 U.S.C. § 2000e–5(e).

In opposition, plaintiffs contend that Pan Am's refusal to grant full back seniority upon rehiring amounts to a "continuing violation" of Title VII because the 42 U.S.C. § 2000e–5(e) period commences anew each time defendant's seniority policy has an effect upon them. Thus, plaintiffs argue they are not barred by the Title VII "statute of limitations" because Pan Am's unlawful acts of discrimination are current and ongoing.

Preliminarily, it is well established that a policy, neutral on its face, which operates to perpetuate the effects of past discrimination is itself unlawful under Title VII. *Griggs v. Duke Power Co.*, 401 U.S. 424, 430, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *United States v. Ironworkers Local 86*, 443 F.2d 544, 553 (9th Cir. 1970), *cert. denied*, 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971). This principle applies to seniority systems which have the effect of preventing individuals who have been discriminated against in the pa ˙ from attaining their rightful place in the employment hierarchy. *See, e. g., Acha v. Beame*, 531 F.2d 648 (2d Cir. 1976); *Local 189, United Papermakers & Paperworkers v. United States*, 416 F.2d 980, 988 (5th Cir. 1969).

At this time, only one circuit has decided the precise issue involved in the instant case, and that decision supports plaintiffs' view. In *Evans v. United Air Lines*, 534 F.2d 1247 (7th Cir. 1976), on facts identical to those involved here, the Seventh Circuit held that Section 2000e–5(e) was not a bar

---

1. *See*, Act of March 24, 1972, Pub.L. No. 92261, § 4, 86 Stat. 104, amending 42 U.S.C. § 2000e–5(d) and (e).

to a suit for lost seniority and back pay where plaintiff stewardess had been rehired four years after involuntary termination pursuant to an airline policy disqualifying stewardesses from employment upon marriage. Defendant's motion to dismiss was denied, despite plaintiff's failure to file EEOC charges within ninety days of her original termination, because the court expressly adopted the "continuing violation" approach. In his opinion, Judge Adams[2] relied heavily upon the Supreme Court's reading of the seniority provision of Title VII (42 U.S.C. § 2000e–2(h)) in *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976):

> "It is in the context of the *Franks* decision that we must consider whether Evans' complaint was filed within 90 days of a violation of Title VII, thus affording jurisdiction to the district court. More specifically, the issue is whether section 2000e–2(h) may be used to interpose a legal bar to Evans' theory that the perpetuation of past discrimination through United's current seniority policy constitutes a continuing violation of her Title VII rights.
>
> \* \* \* \* \* \*
>
> \* \* \* If the prior discharge was itself a discriminatory one, then United's seniority policy is an instrument that extends the impact of past discrimination, albeit unintentionally. Consequently, the present application of United's seniority policy is deemed to be discriminatory. It has been held in a number of instances that a facially neutral seniority policy may be in violation of Title VII if its effect is to perpetuate the disadvantages accruing from prior discrimination.
>
> The teaching of *Franks* confirms these holdings. Section 2000e–2(h) must be understood as relatively narrow, although necessary, exception to the Congressional intent to prohibit all practices of whatever form that create inequalities. It applies only to seniority rights vesting be-

fore the 1965 effective date of Title VII. United's seniority program, however, transmits into the present the disadvantages allegedly resulting from a 1968 discrimination. In these circumstances, section 2000e–2(h) cannot be used to erect a legal bar to Evans' claim that she is the victim of a current discrimination as a result of a present seniority practice that imposes upon her the effects of a past employment discrimination by United.

> For the above reasons, we conclude that Evans' complaint, having been filed during the pendency of the alleged discrimination, was not time-barred." *Evans v. United Air Lines, supra*, 534 F.2d 1247, at 1250.

A recent district court case, *Acha v. Beame*, 12 EPD ¶ 11,113 (S.D.N.Y.1976), expressly follows *Evans*.

Against *Evans*, Pan Am posits the Ninth Circuit opinion in *Collins v. United Air Lines*, 514 F.2d 594 (9th Cir. 1975). In that case, plaintiff stewardess was in a position identical to plaintiff in *Evans*, except that Collins had never been rehired after her forced termination pursuant to the airline's no-marriage policy. Thus, Collins' claim was primarily for reinstatement; she argued that the Title VII "statute of limitations" was not a bar to her suit because defendant's failure to rehire her constituted a "continuing violation". Judge Koelsch disagreed:

> "Collins contends that here the 90-day filing requirement is satisfied because the alleged violation is a continuing one. *See Pacific Maritime Association v. Quinn*, 491 F.2d 1294, 1296, n. 6 (9th Cir. 1974). We are not persuaded.
>
> We cannot accept Collins' argument that her continuing nonemployment as a stewardess resulting from the alleged unlawful practice is itself a violation of the Act. Under the statute, it is the alleged unlawful act or practice—not merely its effects—which must have occurred within the 90 days preceding the filing of

2. Judge Arlin M. Adams of the Third Circuit was sitting by designation in *Evans v. United Air Lines*, 534 F.2d 1247 (7th Cir. 1976), and wrote the opinion. Thus, the views espoused in that case have some inter-circuit appeal.

charges before the EEOC. Were we to hold otherwise, we would undermine the significance of the Congressionally mandated 90-day limitation period.

* * * As the Third Circuit aptly stated in a labor context in *NLRB v. Textile Machine Works,* 214 F.2d 929, 932 (3d Cir. 1954):

'A discharged employee who seeks to be *reinstated* is really litigating the unfairness of his original discharge because only if the original discharge was discriminatory is he entitled to be reinstated as if he had never ceased working for the employer. The word *reinstatement* must be employed in this connection as the equivalent of uninterrupted employment. * * * The concept of a discriminatory refusal to hire is a different concept. * * *'*' " *Collins v. United Air Lines, supra,* 514 F.2d at 596.

Pan Am strenuously argues that *Collins* is inconsistent with *Evans* and that, of course, this Court is bound by the holdings of the Ninth Circuit. For the reasons that follow, the Court disagrees with Pan Am—*Collins* and *Evans* are quite reconcilable.[3]

Whereas an employee's so-called "continuing nonemployment" (*Collins*) is merely a mechanical consequence or "effect" of the original forced resignation, an employer's act of reemployment without retroactive seniority (*Evans*) constitutes, in part at least, an affirmative perpetuation of, an act in essence based upon, the original discriminatory termination. Thus, it is quite consistent to hold an employer legally accountable for the latter, but not the former, where suit on the original discriminatory termination is barred as untimely.

Also, the Ninth Circuit has recognized the "continuing violation" doctrine in *Pacific Maritime Association v. Quinn,* 491 F.2d 1294, 1296 n.6 (9th Cir. 1974) as well as in *Collins* itself. *Collins v. United Air Lines, supra,* 514 F.2d at 596. Though the *Collins* court was not persuaded to apply the doctrine to the precise facts before it, the implication is that, in the view of the Ninth Circuit, the doctrine *does* have its application outside of those facts.[4] Furthermore, the Ninth Circuit very recently cited *Evans* with apparent approval for the proposition that current seniority preferences may "[perpetrate] the effects of past discriminatory practices and [constitute] a present violation of Title VII". *Gibson v. Local 40, Supercargoers & Checkers, ILWU,* 543 F.2d 1259 (9th Cir. 1976).

Pan Am argues that the *Evans* court misread *Franks.* The Court disagrees and finds sustenance for the instant decision in the *Franks* case. The Supreme Court in *Franks* held that lost seniority benefits may be a proper form of relief even where the seniority structure itself is not under attack, but rather the hiring or firing system

---

**3.** Surprisingly, the court in *Evans v. United Air Lines,* 534 F.2d 1247 (7th Cir. 1976), made no mention of *Collins v. United Air Lines,* 514 F.2d 594 (9th Cir. 1975). However, when the Seventh Circuit first decided *Evans,* it affirmed the district court's dismissal of the complaint, purporting to follow *Collins. See,* the *per curiam* opinion in *Evans v. United Air Lines,* 11 EPD ¶ 10,665 (7th Cir. 1976). Judge Cummings dissented in that decision, distinguishing *Collins*:

"* * * The alleged continuing discrimination in *Collins* was the failure to rehire plaintiff. Title VII, however, imposes no obligation on the employer *to hire anyone* unless the refusal is motivated by discrimination. There was no evidence in *Collins* that the decision not to rehire the plaintiff was based at all upon the past act of discrimination." *Evans v. United Air Lines, supra,* 11 EPD ¶ 10,665 at 6814.

Obviously, Judge Cummings felt, as this Court does, that the acts of failure to rehire and refusal to grant lost seniority upon reinstatement are quite distinguishable. After the Supreme Court decision in *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), the same Seventh Circuit panel reconsidered *Evans* and reversed.

**4.** In addition, the Court notes that *Collins v. United Air Lines,* 514 F.2d 594 (9th Cir. 1975), was decided before the Supreme Court case upon which the court in *Evans v. United Air Lines,* 534 F.2d 1247 (7th Cir. 1976), so heavily relied—*Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). *Franks* may reinforce any predilection the Ninth Circuit has toward adoption of the "continuing violation" theory in the context of seniority.

which underlies it. Although, admittedly, *Franks* does not deal with the Title VII "statute of limitations", the case implies that even where the underlying practice has been dissolved or discontinued, seniority rights may be restored to remedy continuing manifestations of the original discrimination. *Franks* indicates that the object of Title VII is to ensure that an aggrieved person obtains his "rightful place in the hierarchy of seniority" so that he will not "perpetually remain subordinate to persons who, but for the illegal discrimination, would have been in respect to entitlement to these benefits his inferiors". *Franks v. Bowman Transportation Co., supra,* 424 U.S. at 768, 96 S.Ct. at 1266. Furthermore, the *Franks* court began:

> " * * * by repeating the observation of earlier decisions that in enacting Title VII of the Civil Rights Act of 1964, Congress intended to prohibit all practices in whatever form which create inequality in employment opportunity due to discrimination on the basis of race, religion, sex, or national origin, * * * and ordained that its policy of outlawing such discrimination should have the 'highest priority'. * * * [T]he Act is intended to make the victims of unlawful employment discrimination whole and * * * the attainment of this objective * * * requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination.' Section by Section Analysis of H.R. 1746, accompanying The Equal Employment Opportunity Act of 1972—Conference Report, 118 Cong. Rec. 7166, 7168 (1972). This is emphatic confirmation that federal courts are empowered to fashion such relief as the particular circumstances of a case may require to effect restitution, making whole

insofar as possible the victims of racial discrimination in hiring." *Franks v. Bowman Transportation Co., supra,* 424 U.S. at 763–764, 96 S.Ct. at 1263. (Citations omitted.)

In contrast to the broad "make whole" policy of Title VII, is the narrower purpose of Section 2000e–5(e):

> " 'Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded * * *.' *Burnett v. New York Central R.R. Co., supra,* 380 U.S. [424] at 428, 85 S.Ct. [1050] at 1054 [13 L.Ed.2d 941]. Congress, in placing the various time limitations in Title VII, was attempting to eliminate the problem of 'second thought complaints,' stale complaints and the hampering effect that they can have on our labor market. However, the time limitation is meant to penalize only those who sleep on their rights and remedies, not one who actively attempts to settle his complaint by following the 'rules of the shop.' *Moreover, 'the policy behind statutes of limitations is outweighed when the interests of justice require vindication of the plaintiff rights.'* *Burnett v. New York Central R.R., supra,* at 428, 85 S.Ct. at 1055. This is the only consistent reading of a 'humane and remedial Act.' *Burnett v. New York Central R.R. Co., supra,* at 427, 85 S.Ct. 1050." *Culpepper v. Reynolds Metals Co.,* 421 F.2d 888, 892 (5th Cir. 1970). (Emphasis added.)

 The "continuing violation" doctrine constitutes judicial recognition of the overriding importance of Title VII's substantive policies when compared with the Act's "statute of limitations".[5] In the instant

---

5. Admittedly, at least one court appears to have taken a different view of the relative importance of the policies involved:

> " * * * strong policy reasons dictate against holding that an employer who, at some remote time in the past, discriminated on the basis of race or sex, and now applies a

neutral seniority system to all employees is guilty of committing a continuing violation of Title VII.

It is widely recognized that an administrative agency like the EEOC with limited resources should only be required to investigate fresh discriminatory acts. To the extent

case, the valuable statute of limitations policy of guarding against stale complaints is barely threatened. Here we have original discriminatory acts of forced resignation pursuant to a blanket, facially discriminatory policy of terminating pregnant women. There are few, if any, individual circumstances which might require proof at trial; in fact, at oral argument, defense counsel was unable to describe any "statute of limitations"—related prejudice that might accrue. Because there is little or no visible prejudice to Pan Am by virtue of the lapse of time since its original act of discrimination, defendant's need for statute of limitations protection is minimized here. Moreover, the fact of reinstatement without back seniority and not the original termination is the focus of this lawsuit—the original discrimination has been perpetuated in a new form. Again, this is the critical difference between the instant case and *Collins*, where the purported "continuing act" of discrimination was but a shadow or functional equivalent of the original act. Seniority is, in its very nature, a future-oriented, perpetuating, continuing structure— one which pervades and controls the realm of future benefits. The *Collins* "event" of "continuing nonemployment", on the other hand, points entirely to the past event of forced resignation.

■ Thus, while the importance of the statute of limitations policy is quite curtailed here, the weight of Title VII's substantive policy is maximized. *Franks* highlighted the centrality of seniority relief to Title VII and rendered the clear substantive import of the Act even clearer. In sum, the instant case is one which evidences the proposition that the statute of limitations "policy of repose, designed to protect defendants is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights". *Burnett v. New York Central R.R. Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 1055, 13 L.Ed.2d 941

that it will always bring past violations forward into the present, the continuing violation doctrine impairs this basic policy. Applied in the context of a seniority system, it may well lead to an inefficient use of scarce

(1964) (quoted in *Culpepper v. Reynolds Metals Co., supra,* 421 F.2d at 892). "The issue of seniority relief cuts to the very heart of Title VII's primary objective of eradicating present and future discrimination * * *." *Franks v. Bowman Transportation Co., supra,* 424 U.S. at 768 n.28, 96 S.Ct. at 1266.

The Court is somewhat troubled by the fact that *Collins* and *Evans*, when taken together, hold that where an employee aggrieved under Title VII has allowed the "statute of limitations" to commence and pass his employer need not rehire him at all, yet that employee must be awarded full retroactive seniority if his employer does rehire him. In other words, it might seem that the decision here encourages employers in such a situation not to rehire at all, lest they be "punished" (by being required to add back seniority to their benevolence) for doing so.

However, if such a risk is built into the *Evans-Collins* result, and even if such a risk is more real than hypothetical, the Court concludes that such a risk is worth the legal result.

## II.

Having decided to follow *Evans*, and having thereby decided that Pan Am's original discriminatory termination of plaintiffs does not commence Section 2000e–5(e) for the purposes of this case, the next question is what event *does* so commence the statute. Plaintiffs, of course, argue that "continuing violations" occur at no particular point in time but rather self-perpetuate and, therefore, commence Section 2000e–5(e) with each passing application of the seniority system. To adopt this position would be to ignore the admonition of the *Collins* court against "undermin[ing] the significance of the Congressionally mandated 90-day limitation period". *Collins v. United Air Lines, supra,* 514 F.2d at 596. Clearly, a "statute

administrative and judicial resources." *Cates v. Trans World Airlines,* 12 EPD ¶ 11,-137 (S.D.N.Y.1976) at 5240. (Citations omitted.)

of limitations" which never commences would be a statute judicially overruled.

Either one of two events might commence the statute—the date upon which plaintiffs were rehired by Pan Am or the date upon which plaintiffs may be laid off due to inferior seniority. Since the plaintiffs are all currently employed by Pan Am, the latter event has not yet occurred.[6]

*Kennedy v. Braniff Airways, Inc.,* 403 F.Supp. 707, 710 (N.D.Tex.1975), posits date of reinstatement as the most appropriate event because "at that point [plaintiffs] were surely put on notice of [defendant airline's] seniority policies". *Cates v. Trans World Airlines, supra,* 12 EPD ¶ 11,137 at 5241, on the other hand, supports the event of layoff:

"Policy reasons for choosing the date of layoff are clear. It has the advantage of certainty for the EEOC and the courts, each of which is charged with the administration and enforcement of Title VII. Also, while it is arguable that even after the layoff a date-of-hire seniority system continues to operate to the detriment of more junior employees such as Cates and George (especially where, as here, recalls are in order of seniority), it cannot be doubted that the layoff is the one event which brings matters to a head. It is the definitive point in time when the adverse impact of a low seniority status is most severe, and the affected employee feels most aggrieved. In addition from the standpoint of the individual who has actually lost his job, the layoff presents him with a clear-cut break with the past, something in the nature of a *fait accompli.* Normally, it is at this point that the employee who thinks that he or she has

been treated unfairly will feel compelled to take action. From such date forward, it is not unreasonable to demand that a victim of past date-of-hire discrimination take steps to protect his or her rights."

While plaintiffs here were *theoretically* on notice of Pan Am's seniority policies as of the date they were rehired, in actuality the literal impact of seniority may take some time to sink in. This may be true even where, as in the instant case, seniority affects routine flight bidding. The full weight of inferior seniority is often not felt until the occurrence of an event, such as transfer or layoff, which serves to crystallize an employee's situation. Essentially, a reinstatement date would somewhat undercut the Court's holding that Pan Am's violations here are "continuing". Thus, the Court finds the logic of *Cates* persuasive on this issue and holds that, for the purpose of the instant litigation, the date of layoff controls the commencement of Section 2000e–5(e). This result effectuates the policies underlying the "continuing violation" doctrine without undermining the Title VII "statute of limitations".

### III.

Finally, there remains the question whether those plaintiffs[7] whose original forced termination occurred prior to the effective date of Title VII (July 2, 1965) are entitled to relief in this case. It might be argued that discriminatory acts occurring prior to July 2, 1965, are by definition not "violations" of Title VII; hence, an act which is not a violation at all cannot form the basis for a "continuing violation" claim. Notwithstanding the logical purity of this line of reasoning, the argument obstructs the "make-whole" policy of Title VII and,

---

**6.** Although none of plaintiffs have, as yet, been laid off due to inferior seniority, the effects of Pan Am's refusal to award them retroactive seniority have been and continue to be widely experienced. Seniority determines plaintiffs' ability to bid on desirable flights and routes, their ability to withstand transfer as well as layoff and, ultimately, the amounts of compensation and benefits they receive. Plaintiffs' claims are, therefore, not premature. The Court also notes that choosing a commence-

ment date is quite necessary here. Whereas *Kennan* plaintiffs have filed within the applicable one hundred eighty days of their reinstatements, the *Fyfe* named plaintiffs apparently have not.

**7.** Two of the named plaintiffs in *Fyfe* were forced to resign in July, 1964, and April, 1965, respectively. Presumably, some unnamed class plaintiffs fall into the pre-Title VII category as well.

indeed, seems to have been rejected in the important case of *Local 189, United Papermakers & Paperworkers v. United States, supra.* In *Papermakers,* defendant's ostensibly neutral seniority system was found to have been based on "progression lines" which had been segregated prior to the passage of Title VII. In 1964 these lines were merged so as to render the seniority structure facially nondiscriminatory. However, despite the fact that the discriminatory act of segregating the lines both occurred and was facially remedied prior to the effective date of Title VII, the court held the current seniority structure to be violative of the Act because it perpetuated the effects of the pre-1964 segregation. "The Act should be construed to prohibit the *future awarding* of vacant jobs on the basis of a seniority system that 'locks in' prior racial classification" regardless of whether the racial classification and/or the "lock in" occurred before July 2, 1965. 416 F.2d at 988.

In the instant case, Pan Am's refusal to award plaintiffs lost seniority status "locks in" the prior discriminatory terminations and perpetuates their effects. Under *Papermakers,* plaintiffs terminated prior to July 2, 1965, should have the same rights in this case as those forced to resign thereafter.

■ Opposed to the foregoing view is *Kennedy v. Braniff Airways, Inc., supra,* 403 F.Supp. at 709 n.4, which cites the following authorities for its own position:

"See *Dobbins v. Local 212 International Brotherhood of Electrical Workers AFL-CIO,* 292 F.Supp. 413, 443 (D.C.Ohio 1968). The case refers to the legislative history by Senators Clark and Case that indicates Congressional concern about the retroactive application of the Act, with particular reference to seniority systems. Also see 88 Harv.L.Rev. 1544, 'Last Hired, First Fired Layoffs and Title VII' (May 1975), footnote 104."

Both the Harvard Law Review footnote and the *Dobbins* case state that Title VII operates prospectively and not retroactively, which is clearly correct. There is no direct remedy under Title VII for a pre-1965 discriminatory act which has not in any way been perpetuated. However, these authorities do *not* hold that the post-1965 perpetuation of a pre-1965 discriminatory act is without remedy under Title VII. To the contrary, *Dobbins* explicitly recognizes the validity of remedying such a perpetuation:

"While only a post-Act practice or pattern may furnish the basis for a Title VII claim, evidence of conduct pre-Act is competent and relevant for a number of purposes. One of them, for example, would be to aid in the determination of whether or not a particular practice or pattern, or system had been originally instigated by reason of anything discriminatory based on race or color. Obviously, if it was, the continuance for a day after July 2, 1965, would be discriminatory." *Dobbins v. Local 212 International Brotherhood of Electrical Workers AFL-CIO, supra,* 292 F.Supp. at 443.

As for the legislative history, it is quite true that Senators Clark and Case were concerned about the retroactive application of Title VII, particularly in the seniority area. However, their concern was that retroactivity might force firing of majority workers in order to hire minority persons aggrieved under the Act:

" * * * [The effect of Title VII] is prospective and not retrospective. Thus, for example, if a business has been discriminating in the past and as a result has an all-white working force, when the title comes into effect the employer's obligation would be simply to fill future vacancies on a nondiscriminatory basis. He would not be obliged—or indeed, permitted—to fire whites in order to hire Negroes, or to prefer Negroes for future vacancies, or, once Negroes are hired, to give them special seniority rights at the expense of the white workers hired earlier. (However, where waiting lists for employment or training are, prior to the effective date of the title, maintained on a discriminatory basis, the use of such lists after the title takes effect may be

held an unlawful subterfuge to accomplish discrimination.)" 110 Cong.Rec. 7213 (1964).

Again, there is no indication that the Senators were troubled by possible utilization of Title VII to remedy pre-Act discriminations which were being perpetuated, either in form or substance, after 1965. To the contrary, the final, parenthetical sentence in the passage quoted indicates support for the result obtained five years later in *Papermakers.* Indeed, a 1972 Senate Report cites *Papermakers* as a case which has "contributed significantly to the Federal effort to combat employment discrimination". S.Rep. No. 92–415, 92d Cong., 2d Sess. 5 (1972).

*Franks* might be viewed as holding, by implication, that Section 2000e–2(h) provides a defense to at least some claims challenging the perpetuation of pre-Title VII discrimination via a seniority system; however, there is no indication that the claims involved here fall into any such category. On the contrary, the "rightful place" theory adopted by the *Franks* court originated in the *Papermakers* case, the viability of which remains unquestioned.

It might be argued that indulgence, in this case, of claims originating in pre-1965 acts of discrimination could encourage a hypothetical employee in another case to sue for lost seniority based, for example, on an alleged discriminatory refusal to promote in 1909. Thus, it is important to note once again that the original discriminatory acts in the instant litigation are not isolated, disputed events necessitating the exhumation of archaic evidence. To the contrary, they are apparently undisputed acts committed pursuant to a clear, blanket policy of pregnancy-based termination, which policy was subsequently discontinued, quite apparently in an effort to comply with Title VII.[8] Under the circumstances of this case, the claims at issue should be allowed.

Of course, all this Court decides in this Opinion is that Pan Am's motions to dismiss are denied. The form, extent and substance of ultimate seniority relief (indeed the question of whether seniority relief is appropriate at all) remains discretionary with this Court, pending further proceedings. *Franks v. Bowman Transportation Co., supra,* 424 U.S. at 770, 96 S.Ct. 1251. Plaintiffs' *claims* for such relief, however, must continue.

IV.

Since plaintiffs seek various forms of relief here, the claims must be separated for the purposes of the instant motions.

1. All plaintiffs seek an order requiring Pan Am to credit each plaintiff with the full seniority that she would have accumulated but for Pan Am's unlawful pregnancy policy. Under *Evans,* these claims are proper.

2. The *Kennan* plaintiffs specifically seek an order requiring Pan Am to back pay each plaintiff, from the date of reemployment, for the difference between amounts earned and amounts that would have been earned on flights assigned in accordance with proper seniority. As these claims are part and parcel of the "continuing violation" alleged, they are likewise proper under *Evans.* Since the parties have not yet addressed the issue, the Court reserves judgment on whether and how to limit the time period over which recovery on these claims may be permitted.

3. The *Fyfe* plaintiffs specifically seek an order requiring Pan Am to offer reemployment to members of the class wrongfully discharged. Assuming that this request refers to employees terminated pre-1971 but never rehired, and assuming that these alleged class members failed, like all of the named plaintiffs, to file EEOC charges within ninety days of their forced resignations, their claims for reemployment are clearly barred by *Collins.*

---

8. In addition, none of the named plaintiffs in this case were terminated prior to the date of *enactment* of Title VII—July 2, *1964.* The apparent reason for this is that Pan Am's policy

of offering to reemploy pregnancy-terminated flight attendants extends only to those terminated on or after July 2, 1964.

4. The *Kennan* plaintiffs specifically seek an order requiring Pan Am to back pay each plaintiff for the period from her termination to her reemployment. These claims are likewise barred as relating wholly to the original forced resignations and to the period of "continuing nonemployment" with respect to which *Collins* denied relief as a matter of law.

### ORDER

In accordance with the foregoing Opinion, defendant Pan Am's motions to dismiss the complaints are hereby DENIED, except, however, that the aforementioned claims for reemployment and back pay for the period from termination to reemployment are hereby dismissed.