Taft B. TURNER, Jr., Plaintiff,

v.

SEABOARD COAST LINE RAILROAD
COMPANY, Defendant.

Civ. No. 4274 Civil.

United States District Court,
E. D. North Carolina,
Raleigh Division.

Feb. 17, 1978.

See also 62 F.R.D. 611.

Taft B. Turner, pro se.

Thomas F. Ellis, Frank P. Ward Jr., Maupin, Taylor & Ellis, Raleigh, N. C., for defendant.

## MEMORANDUM OF DECISION

DUPREE, District Judge.

In this employment discrimination case based on race the plaintiff, a former employee of the defendant Railroad, filed a complaint alleging violation by defendant of his rights under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Plaintiff was last employed by the defendant in February of 1970 when he was laid off on account of a work-related injury. In May of 1972 the plaintiff was requested by defendant for a reason not appearing on the record either by way of allegation or otherwise to resign from his employment, but he declined to do so. Instead plaintiff on June 12, 1972 filed with the Equal Employment Opportunity Commission, apparently in his own handwriting, a charge of discrimination against him by the defendant as late as 26 April 1972. Following receipt by plaintiff in due course of a right-to-sue letter from the

EEOC plaintiff instituted this action on April 3, 1973.

The case is now before the court on defendant's motion to dismiss based on the three-year statute of limitations as applied to the Section 1981 claim and the failure of the plaintiff to file his charge of discrimination with the EEOC within ninety days following the alleged discriminatory acts of the defendant. At the time scheduled for the hearing on January 23, 1978, the plaintiff who had had notice of the hearing appeared in person some thirty minutes after the scheduled time for the hearing but without counsel. Three attorneys previously retained by the plaintiff had for good cause shown been permitted to withdraw their appearance on plaintiff's behalf, and plaintiff stated to the court that a fourth attorney, Michael A. Sheely of Charlotte, North Carolina, who had previously signed pleadings with plaintiff's local counsel, would not appear for the hearing and would probably ask to be relieved from further responsibility in the case. Mr. Sheely, who is not a member of the bar of this court and who would have had to become associated with some attorney who is admitted to practice in this district in order to remain in the case, has since filed a motion for leave to withdraw his representation of the plaintiff which motion has been allowed.

The plaintiff further represented to the court that he had made diligent effort to obtain other counsel to assume the prosecution of this action on his behalf but has not been successful in this endeavor. In view of these developments counsel for defendant agreed to submit the motion to dismiss, which had been extensively briefed by plaintiff's former counsel and defendant, without further argument.

Although this case has been pending for almost five years, very little was accomplished in the early years since the court was informed that one or more other employment discrimination class action cases were pending in other districts in this state, and it appeared that the plaintiff here might in fact be a member of the class of plaintiffs engaged in the prosecution of one or more of those actions. The motion to dismiss was filed in May of 1976 and since that time the parties have by consent obtained enlargements of time in which to file responses, briefs, etc., with the result that the motion is just now ripe for decision.

■ The original complaint undertook to allege facts supporting the maintenance of the action as a class action under Rule 23, F.R.Civ.P., and a threshold question to be decided here is whether the action should be so certified. On the present state of the record there can be but one answer to the question and that is that the action cannot be allowed to proceed as a class action. This is so for the simple reason that the plaintiff, who is now without counsel and who says that he is unable to interest any lawyer in taking his case, cannot under the rule obtaining in this Circuit be permitted to maintain a class action as the pro se representative of a class. The case is therefore properly before the court only on plaintiff's individual claims.

■ With respect to his Section 1981 claim the plaintiff alleges only one overt act of discrimination. He states in paragraph VI of the complaint that his employment with the defendant began on the first day of November, 1966, at which time he was assigned to the "extra board" as a switchman. Fourteen days later he says he was dropped from the "extra board" and not reinstated until March of 1967. "This layoff", plaintiff goes on to allege, "was motivated by racial discrimination on behalf of the defendant." Plaintiff alleges no other discriminatory action against him occurring later than February, 1970 when he was laid off because of an injury sustained in the course of his employment. Since it is settled law in this Circuit that the state statute of limitations (three years in North Carolina) is applicable to claims under Section 1981, it is clear that plaintiff's cause of action under this section is barred by the three-year statute of limitations and defendant's motion to dismiss this phase of plaintiff's claim must therefore be allowed.

Defendant's motion to dismiss plaintiff's Title VII claim is based on plaintiff's alleged failure to file his charge of discrimination with the EEOC within the ninety-day period then allowed by the law. As stated before, the charge was filed on June 12, 1972, and it listed as the most recent date on which defendant committed an act of discrimination as April 26, 1972 which, of course, would have been within the ninety-day period. The charges filed, however, did not identify any discriminatory act as having occurred on that date. In an affidavit signed by the plaintiff on June 18, 1976 he states that "he was asked to resign on or about April 26, 1972," but neither in the affidavit nor in the original charge was it alleged that this request by the defendant that he resign constituted an act of racial discrimination. It was not referred to in plaintiff's original complaint, and in any event he never resigned, and in his complaint the plaintiff alleged that he had never been notified of any termination of his employment.[1]

Plaintiff's charge as filed with the EEOC reads in full as follows:

"7. Explain what unfair thing was done to you. How were other persons treated differently?

"After being injured on job, company forced individual to go to doctors who maintained segregated facilities. When individual refused to go, company refuse to offer any more medical treatment. Also asking individual to resign from said company. Maintaining a quota relative to blacks being hired. Those who are hired are fired for trivial reasons. Reprimanding blacks for mistake made by white personnel. Promoting individuals (white) who have less seniority than blacks, by not informing blacks that such openings are available. Constantly harassing blacks through white personnel in order to force blacks to quit. In no way has the company tried to make blacks feel secure in their attempts to perform

their jobs. I was told by management to accept the ideas of my white co-worker, to seek help through management, but management always condones actions of whites to harass blacks. Hiring whites who are not capable of doing efficient work of which they are hired for, but protecting their every action, to prevent hiring blacks. Thereby producing a situation where the ratio of personnel, black to white, favors company and unions. Never informing blacks of requirements necessary to participate in the sectional foreman apprenticeship. Always producing feelings of inferiority in blacks toward whites. Hiring of blacks for muscle ability instead of intellectual ability or intellectual potential.

"Railroads and unions drawing up dummy contract with the sole purpose of protecting the status quo.

"Local chairmans informing company people of ways to avoid union contracts.

"After black received injury, not seeking immediate medical attention, but continuing to finish the company's work, then to seek medical attention for black.

"Black personnel working for the company are victims of a rote system of employment.

"Asked by white trainmaster to make a switching move not covered by contract. My explanation of contract relative to such move was denounced by all whites on crew. My justification didn't mean anything, relative to the working agreement, because I was a black man."

It will be seen from the foregoing that the plaintiff makes no charge of any overt act of discrimination against him as an individual at any time following his injury which was in February of 1970, more than two years before he filed his charge with the EEOC. He seeks to avoid this failure to file his charge timely, however, by invoking the rule which has come to be known as the "continuing discrimination doctrine."

---

1. If the plaintiff was in fact asked to resign, it may have been related to plaintiff's continued claim of disability resulting from the injury which occasioned his layoff in February, 1970.

For this injury the plaintiff in another action recovered a very substantial verdict in this court last year under the Federal Employers Liability Act.

Numerous cases in which this doctrine has been applied to save a plaintiff's Title VII case from dismissal are cited and relied upon in the lengthy brief filed herein on plaintiff's behalf by his former counsel. Examination of these cases, however, reveals that in almost every instance they have involved class actions, and as we have seen, the plaintiff cannot be allowed to maintain this action as a class action.

More importantly, the cases relied upon by plaintiff were all decided prior to the Supreme Court's decision in *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), reversing 534 F.2d 1247 (7th Cir. 1976). While the EEOC has interpreted this decision to leave intact the continuing discrimination doctrine except in cases involving unlawful discharges, EEOC Interpretative Memorandum released July 12, 1977, 46 L.W. 2028, and some courts, at least in class action cases, have concluded that the doctrine is still a viable one, *Caldwell v. Seaboard Coast Line Railroad Company,* 435 F.Supp. 310 (W.D.N.C. 1977), *cf. Clark v. Olinkraft, Inc.,* 556 F.2d 1219 (5th Cir. 1977), this court is of opinion that in view of *United Air Lines, Inc. v. Evans* an individual plaintiff may no longer (if indeed he ever was able to do so), rely on allegations of continuing discrimination in order to satisfy the jurisdictional requirement that his claim be filed with the EEOC within the time limit prescribed by law where it clearly appears that he has not been discriminated against personally within the statutory period.

Here the plaintiff complained bitterly in his EEOC charge that blacks were subjected by the defendant to less favorable working conditions than whites and certain other indignities such as being sent "to doctors who maintained segregated facilities", and it is clear that plaintiff was not pleased at being advised by management "to accept the ideas of my white co-worker" and by management's apparent rejection of his interpretation of a union contract "because I was a black man." Such matters hardly rise to the level of the continuing discrimination contemplated by the rule as it was applied prior to *United Air Lines v. Evans,* but in any event this court is of the opinion that where the plaintiff himself admittedly suffered no such discriminatory conditions of employment or indignities for more than two years prior to the filing of his charge with the EEOC, he cannot invoke the doctrine under the law as it now exists.

The conclusion is that plaintiff's charge was not timely filed with the EEOC and that the court is therefore without jurisdiction to entertain his action.[2]

The Clerk will enter judgment denying plaintiff's motion to amend the complaint and dismissing the action.

2. After the defendant's motion to dismiss was filed and more than three years after the action had been instituted the plaintiff sought leave to amend his complaint to allege more specifically acts of continuing discrimination in order to avoid the effect of defendant's motion and the court has carefully considered this motion and defendant's response thereto and has concluded that under the circumstances here involved allowance of the amendment would not aid plaintiff's cause and that in any event leave to amend should be denied in this instance in the court's discretion.