**Earl H. GREGORY, Plaintiff,**

v.

**LITTON SYSTEMS, INC., Defendant.**
**No. 68–1744.**

United States District Court,
C. D. California.

July 28, 1970.

As Modified July 31, 1970.

Simon, Sheridan, Murphy, Thornton & Medvene, by Edward M. Medvene, Los Angeles, Cal., for plaintiff.

David R. Cashdan, Office of the Gen. Counsel, Equal Employment Opportunity Commission, Washington, D. C., amicus curiae.

Thomas S. Kerrigan, Beverly Hills, Cal., for defendant.

Charles S. Ralston, Oscar Williams, NAACP Legal Defense and Educational Fund, Inc., San Francisco, Cal., filed a brief as amicus curiae.

IRVING HILL, District Judge.

This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ff. The matter was tried from July 7, 1970, to July 10, 1970, inclusive.

Plaintiff, a negro, seeks back pay, attorney's fees, and injunctive relief on behalf of himself and others similarly situated, as a result of alleged discrimination in withdrawing an offer of employment previously made. He does not seek reinstatement or an order requiring him now to be employed by Defendant. Pre-Trial was waived.

Many of the facts were stipulated, including those related in the paragraph which follows:

On or about February 7, 1968, Plaintiff applied for employment with Defendant (sometimes also referred to herein as "Litton") as a sheet metal mechanic in its Data Systems Division. After verifying his references, Litton, on March 14, 1968, offered Plaintiff employment to start March 18, 1968. Plaintiff accepted the offer. Litton had no knowledge at the time of this offer and acceptance that Plaintiff had previously been arrested. In fact, Plaintiff had previously been arrested on fourteen different occasions in situations other than minor traffic incidents. But he had never been convicted of any criminal offense. Thirteen of these arrests had occurred before 1959. Litton has a "standard policy" of not hiring applicants who have been arrested "on a number of occasions" for things other than minor traffic offenses. In effectuating that policy, Litton requires new employees, before entering their duties, to fill out a form called "Preliminary Security Information", which requires a listing of all arrests other than those involving minor traffic offenses. When Plaintiff's said arrest record was disclosed on the form on March 14, 1968, Litton, under its said policy, withdrew its offer of employment. The offer was withdrawn solely because of the arrest information furnished. Litton's policy required that it withdraw its offer of employment without consideration of Plaintiff's race. The decision to withdraw the offer of employment was in no way predicated on any national security clearance regulations.

Based on the evidence introduced at the trial, I find the further facts set forth in the following-numbered paragraphs.

1. Litton's said policy of disqualifying frequently-arrested persons from employment was objectively applied and was enforced without reference to race, color, religion, sex, or national origin. Litton does employ persons who have previously been arrested and has several hundred such persons now employed on the rolls of its Data Systems Division. But these are cases in which the employees have not suffered arrest on "a number of occasions". Incidentally, Litton has never precisely defined what constitutes "a number of occasions".

2. There is no evidence to support a claim that persons who have suffered no criminal convictions but have been arrested on a number of occasions can be expected, when employed, to perform less efficiently or less honestly than other employees. In fact, the evidence in

the case was overwhelmingly to the contrary. Thus, information concerning a prospective employee's record of arrests without convictions, is irrelevant to his suitability or qualification for employment. In recognition of this irrelevance, the County of Los Angeles, a large-scale employer, has ceased to ask for arrest information in applications for employment.

3. Negroes are arrested substantially more frequently than whites in proportion to their numbers. The evidence on this question was overwhelming and utterly convincing. For example, negroes nationally comprise some 11% of the population and account for 27% of reported arrests and 45% of arrests reported as "suspicion arrests". Thus, any policy that disqualifies prospective employees because of having been arrested once, or more than once, discriminates in fact against negro applicants. This discrimination exists even though such a policy is objectively and fairly applied as between applicants of various races. A substantial and disproportionately large number of negroes are excluded from employment opportunities by Defendant's policy.

4. The discrimination which is inherent in the use of Litton's said policy is not excused or justified by any business necessity.

5. If Litton is permitted to continue obtaining information concerning the prior arrests of applicants for employment which did not result in convictions, the possible use of such information as an illegally discriminatory basis for rejection is so great and so likely, that, in order to effectuate the policies of the Civil Rights Act, Litton should be restrained from obtaining such information. However, Litton should be permitted to obtain and inspect information which is on the public record concerning the prosecution and trial of any prospective employee, even if the proceeding eventually resulted in an acquittal. Records of arrests which do not result in formal prosecution or trial, are not matters of public record.

Certain legal propositions govern this case.

■■■ The policy of Defendant under which Plaintiff was denied employment, i. e., the policy of excluding from employment persons who have suffered a number of arrests without any convictions, is unlawful under Title VII. It is unlawful because it has the foreseeable effect of denying black applicants an equal opportunity for employment. It is unlawful even if it appears, on its face, to be racially neutral and, in its implementation, has not been applied discriminatorily or unfairly as between applicants of different races. See United States v. Sheet Metal Workers International Ass'n Local Union No. 36, 416 F. 2d 123 (8th Cir. 1969); Local 189, United Papermakers and Paperworkers v. United States, 416 F.2d 980 (5th ᴄɪr. 1969). See also Gaston County v. United States, 395 U.S. 285, 89 S.Ct. 1720, 23 L.Ed.2d 309 (1969). In a situation of this kind, good faith in the origination or application of the policy is not a defense. An intent to discriminate is not required to be shown so long as the discrimination shown is not accidental or inadvertent. The intentional use of a policy which in fact discriminates between applicants of different races and can reasonably be seen so to discriminate, is interdicted by the statute, unless the employer can show a business necessity for it. In this context "business necessity" means that the practice or policy is essential to the safe and efficient operation of the business. Local 189, United Papermakers and Paperworkers v. United States, *supra*. As previously stated, the Court finds that the policy in question is not justified or excused by business necessity in this case.

■■■ It is apparent from what has been said above that Plaintiff is entitled to a judgment. In this area of the law, even where the action is not a Civil Rule 23 class action, equitable relief may be granted both for the protection of Plaintiff and for the protection of other applicants similarly situated. Jenkins v.

United Gas Corp., 400 F.2d 28 (5th Cir. 1968); cf. Culpepper v. Reynolds Metals Co., 421 F.2d 888 (5th Cir. 1970). See generally Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (dictum). Such injunctive relief will be given in this case, even though Plaintiff seeks no present employment by Defendant. Cf. Jenkins v. United Gas Corp., *supra.*

Relief will be granted as follows:

1. Plaintiff shall have a money judgment by way of compensatory damages for the difference between what he has earned since Defendant's offer of employment was withdrawn and what he would have earned had he been employed by Defendant. The parties have stipulated that that sum is $4,400. Punitive damages are denied.

2. As provided in the statute, attorney's fees are awardable against Defendant and in favor of Plaintiff's attorney. The amount awarded is $5,000.00, plus normally allowable costs. In addition, Defendant shall pay to Plaintiff's counsel the cost of the deposition of Wolfgang, statutory witness fees paid, travel expenses for the witnesses Wolfgang and Christensen, cost of the transcript of the Court's oral decision, cost of copying exhibits and briefs, all as claimed in the Equal Employment Opportunity Commission's brief filed July 16, 1970. Other items claimed are denied.

3. Defendant is enjoined as follows:

A. From continued discrimination against Plaintiff and other persons similarly situated because of their race, arising out of prior arrests involving no conviction.

B. From seeking from applicants for employment, by questionnaires, forms, or verbally, information concerning their prior arrests which did not result in conviction.

C. From utilizing as a factor in determining any condition of employment, including hiring, promotion, and termination, any record of arrest which did not result in conviction.

D. In view of the fact that arrest information, which is not a matter of public record, can apparently be obtained cheaply and easily from sources other than the applicant, Defendant will be restrained from seeking, obtaining, or considering, in connection with employment of applicants, information concerning arrests of such applicants which did not result in conviction, provided, however, that this shall not prohibit Defendant from seeking and obtaining information on the public record, but provided further that public record information concerning arrests alone may not be utilized, as provided in C above as a factor in determining any condition of employment.

Nothing contained in the injunction shall prohibit or preclude the Defendant from complying with any requirement of national security clearance regulations. Nothing contained in the injunction shall prohibit the Defendant from seeking, ascertaining, considering, or using information concerning criminal convictions of applicants or existing employees. The matter of how, and to what extent, information concerning criminal convictions may be considered and used, is not before me in this case and I mean to express no opinion on any aspect of that question.

This memorandum will serve as the Court's findings of fact and conclusions of law. Counsel for Plaintiff will prepare a proposed judgment, to be submitted to opposing counsel for approval as to form. It shall reach the Court not later than ten days from the date hereof.

It is further ordered that the Clerk serve copies of this Memorandum of Opinion, by United States mail, this date on all parties to this action and the Amicus Curiae.