THE CITY OF CAIRO, Plaintiff-Appellee and Cross-Appellant, *v.* FAIR EMPLOYMENT PRACTICES COMMISSION *et al.*—(JULIUS V. OATS, SR., Defendant-Appellant and Cross-Appellee.)

(No. 72-262;

Fifth District—May 13, 1974.

JONES, J., dissenting.

R. R. McMahan, of Lord, Bissell & Brook, of Chicago (Michael P. Seng and Margaret Stapleton, both of Land of Lincoln Legal Assistance Foundation, Inc., of counsel), for Julius V. Oats, Sr.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel, Assistant Attorney General, of counsel), for Fair Employment Practices Commission.

John G. Holland and George J. Kiriakos, both of Cairo, for City of Cairo.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

The Fair Employment Practices Commission, hereinafter referred to as FEPC, on the petition of Julius Oats, Sr., found the City of Cairo's policy of excluding persons with arrest records from employment on the City's police force to be a racially discriminatory hiring practice forbidden by section 3(a) of the Illinois Fair Employment Practices Act (Ill. Rev. Stat. 1967, ch. 48, par. 853(a)). The circuit court of Alexander County reversed the FEPC. Oats and the FEPC appeal from the judgment of the circuit court. On cross-appeal the City of Cairo argues that the FEPC lacked jurisdiction to entertain Oats's petition.

In May of 1969, the appellant, Julius Oats, Sr., filed an application to the Board of Police and Fire Commissioners of the City of Cairo for employment on its police force. After written and oral examinations his name was placed on the list of persons eligible to be employed as a policeman. On August 13, 1969, the Board sent him a letter indicating that it had withdrawn his name from the eligibility list as a result of his arrest record which had been obtained from his state and federal "rap sheets". The F.B.I. document contained an entry which indicated that Oats had been arrested for army desertion in 1964 by the police of St. Joseph, Michigan, and that he had been charged with disorderly conduct in Chicago in 1968. The Illinois "rap sheet" showed only the Chicago charge. Neither sheet indicated the disposition of these charges.[1]

Subsequently, Oats met with the Board on a number of occasions in an attempt to persuade them to change their minds. Having failed to effect a reversal of their previous decision, Oats filed a charge of unfair

---

[1] It was subsequently learned that the Army desertion charge was changed to a charge of "Absent Without Leave" and Oats was discharged from the Army "Under Honorable Conditions". The Chicago disorderly conduct complaint charged the defendant with collecting in a crowd for unlawful purposes. However, the presiding judge refused to issue a warrant.

employment practice with the FEPC, claiming that he had been dropped from the eligibility list because of his race. A hearing before an FEPC Hearing Examiner was held on July 2, 1970.

The hearing examiner concluded that Oats was removed, in good faith, because of his arrest record, as indicated by the desertion and disorderly conduct charges. He recommended that the FEPC dismiss the complaint as there was no evidence of discriminatory intent.

Over 1 year later, on October 29, 1971, the Commission itself handed down its ruling and, in reversing its own hearing examiner, stated:

"The Commission therefore concludes that the denial by the Board of Fire and Police Commissioners of the City of Cairo of employment to Mr. Julius Oats, Sr., after he had successfully passed both the written and oral examinations, based solely upon his arrest record was discriminatory to Mr. Oats because of his race. Consistent with the Supreme Court's decision in the *Griggs v. Duke Power Co.* case, the Commission further finds that the good intent or absence of discriminatory intent upon the part of the Board of Fire and Police Commissioners does not overcome the discriminatory employment procedure."

On December 3, 1971, the above ruling was appealed to the Circuit Court of Alexander County pursuant to the provisions of the Administrative Review Act (Ill. Rev. Stat., ch. 110, par. 264 *et seq.*). The court reversed the Commission's order and found *inter alia:*

1. That the Fair Employment Practices Commission did have jurisdiction in the case.
2. That the findings of fact of the Hearing Examiner were supported by a preponderance of the evidence.
3. That as a matter of law of the State of Illinois, the Cairo Board of Fire and Police Commissioners had the authority to determine in 1969 whether to hire a policeman based on his arrest records, and the conclusion by the Fair Employment Practices Commissioners that it was against the law of the State of Illinois and the Constitution to drop police candidate, Julius Oats, from the police eligibility list on the basis of arrest records was in error.
4. That there was no showing on this record that the Cairo Police and Fire Board applied any different standard for a black man than a white man in removing police candidates from the police eligibility list because of arrest records.

We deal with the following issues:

I. Whether the FEPC had jurisdiction in this matter.

II. Whether appellant Oats was removed from the eligibility list *solely* on the basis of his arrest record.

III. Whether the City of Cairo's hiring policy in 1969 [2] of excluding persons from employment because they had arrest records was inherently racially discriminatory regardless of lack of motive or intent to discriminate or evenness of application of the policy.

## I.

We first consider the city's contention on cross-appeal that the FEPC lacked jurisdiction to entertain Oats's petition.

The city argues that the FEPC lacked jurisdiction to entertain Julius Oats's charge that the city had committed an unfair employment practice when its Board of Police and Fire Commissioners removed his name from the list of eligible candidates for employment as a police officer. The city contends that the above decision of the Board was a "final administrative decision" and, as such, subject to the provisions of the Administrative Review Act (Ill. Rev. Stat., ch. 110, par. 265); that the Administrative Review Act was Mr. Oats's exclusive remedy from the adverse decision of the Board; that the appellant failed to file for review within 35 days thereafter, pursuant to section 267 of the Administrative Review Act; and that as the result of the failure to appeal in accordance with the provisions of section 267, Mr. Oats is jurisdictionally barred from having the matter considered by way of an alternate remedy.

██ We reject the city's contention in this regard for two reasons. First, the Administrative Review Act itself (Ill. Rev. Stat. 1967, ch. 110, par. 265) provides:

"This Act shall apply to and govern every action to *review judicially* a final decision of any administrative agency * * *. In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies *heretofore available* shall not be employed after the effective date hereof." (Emphasis added.)

Although the Administrative Review Act thus governs actions to *review judicially* final decisions of administrative agencies subject to its pro-

---

[2] In 1971 the General Assembly amended chapter 48, paragraph 853 by P.A. 77-1552, paragraph 1, making it an unfair employment practice: "* * * (e) For any employer, employment agency or labor organization to inquire on a written application whether a job applicant has ever been arrested; * * *." This became effective September 17, 1971, and thus has no application to the 1969 action of the City of Cairo.

visions, this court is of the opinion that filing a petition with the FEPC simply cannot be construed as an action to review *judicially* a decision of an administrative agency. Furthermore, the Administrative Review Act expressly prohibits modes of review of administrative agencies *"heretofore available"* but makes no mention of *subsequent* remedial alternatives. The Fair Employment Practices Act was enacted in 1961, 16 years *subsequent* to the enactment of the Administrative Review Act. In enacting the Fair Employment Practices Act, the General Assembly created a *new* substantive cause of action. The statute was specifically made applicable to municipal corporations such as the City of Cairo (Ill. Rev. Stat. 1971, ch. 48, par. 852(d)(ii)). To enforce the new substantive rights created by the Act, the General Assembly created the FEPC and vested it with jurisdiction to adjudicate disputes arising under the Act. The interpretation of the law governing administrative review which is urged by the City of Cairo would frustrate the legislative intent by barring access to that remedy in any case where a governmental administrative body has committed an unfair employment practice. Jurisdictional issues have been resolved in analogous situations, in favor of effectuating the individual's civil rights (*Evans v. Local Union 2127*, 313 F.Supp. 1354; *United States v. Georgia Power Co.*, 301 F.Supp. 538). We agree with and affirm the order of the circuit court wherein it found that the FEPC had jurisdiction in this matter.

## II.

We next consider whether Julius Oats was dropped from the police eligibility list solely on the basis of his arrest record. The hearing examiner, the full FEPC and the circuit court all viewed the case in this context. The city has attempted to confuse the issue on appeal by interjecting a number of factors which were not considered by the Board of Police and Fire Commissioners at the time they made the decision to drop Oats from the eligibility list. A careful review of the record clearly shows that Julius Oats was removed from the police eligibility list solely on the basis of his arrest record.

## III.

We now consider the central issue in this case of whether the City of Cairo's hiring policy in 1969 [3] of excluding persons from employment because they had arrest records was inherently racially discriminatory, regardless of lack of motive of intent to discriminate or evenness of application of this policy so as to constitute an unfair employment practice within the meaning of the Illinois Fair Employment Practices Act.

[3] See footnote 2, *supra.*

■■ The racial discrimination provisions of Federal and Illinois law are substantially identical (compare the Federal Civil Rights Act of 1964, 42 U.S.C. 2000a *et seq.*, and the Illinois Fair Employment Practices Act, Ill. Rev. Stat., ch. 48, par. 853). Thus, in the absence of Illinois cases dealing with this issue, the Federal decisions regarding racial discrimination in employment, while not controlling, are relevant and helpful precedents.

We observe that the hearing examiner, the FEPC, and the circuit court apparently agreed upon the facts but disagreed as to the legal implications of those facts. The conclusions of law reached by the examiner and the circuit court strongly suggest that both felt that a finding of a racially discriminatory employment practice must be predicated upon a finding of a racially discriminatory *motive* on the part of the employer. The circuit court apparently relied heavily on the fact that the policy was *applied uniformly* to black and white applicants in concluding that the policy was not racially discriminatory. However, the Commission apparently felt that since the policy *operated* to exclude Negroes, neither the employer's motive nor the evenness of application of the policy was as important as the consequences of the policy. This court feels that the issue of motive is controlled by the following case:

In *Griggs v. Duke Power Co.* (1971), 401 U.S. 424, the United States Supreme Court decided a case involving an employer who required that job applicants either possess a high school diploma, or pass a general intelligence test. It was held that these requirements had the effect of excluding disproportionate number of black persons from employment and that therefore the requirements were an unfair employment practice under the 1964 Civil Rights Act. The Court said:

"*   *   * [G]ood intent or absence of discriminatory intent does not redeem employment procedures or testing mechanisms that operate as 'built-in headwinds' for minority groups and are unrelated to measuring job capabilities.

*   *   *

Congress directed the thrust of the Act to the *consequences* of employment practices, *not simply the motivation*. More than that, Congress has placed on the employer the burden of showing that any given requirement must have a manifest relationship to the employment in question." 401 U.S. at 432. Emphasis added.

■■ This court agrees with *Griggs* that the *consequences* of a policy can cause it to be an unfair employment practice regardless of the intent or motive of the employer. There is nothing in the Illinois Act which suggests that the legislature intended for the statute to apply only to cases of racially motivated employment discrimination, rather than to all

cases where an employment practice operates to discriminate racially as a matter of fact.

In *Gregory v. Litton Systems, Inc.* (C.D. Calif. 1970), 316 F.Supp. 401, the court found an employer's "no-arrest" hiring policy was racially discriminatory in effect. In *Gregory* a worker was discharged when he revealed to his employer that he had a record of 13 arrests. It was stipulated that Litton had a policy of not employing persons with a record of arrests and that Gregory had been discharged for that reason alone, as is found in the present case. In *Gregory* the court held:

> "Negroes are arrested substantially more frequently than whites in proportion to their numbers. The evidence on this question was overwhelming and utterly convincing. For example, Negroes nationally comprise some 11% of the population and account for 27% of reported arrests and 45% of arrests reported as 'suspicion arrests'. Thus, any policy that disqualifies prospective employees because of having been arrested once, or more than once, discriminates in fact against Negro applicants. This discrimination exists even though such a policy is objectively and fairly applied as between applicants of various races. A substantial and disproportionately large number of Negroes are excluded from employment opportunities by Defendant's policy.
>
>      \*      \*      \*
>
> If Litton is permitted to continue obtaining information concerning the prior arrests of applicants for employment which did not result in convictions, the possible use of such information as an illegally discriminatory basis for rejection is so great and so likely, that, in order to effectuate the policies of the Civil Rights Act, Litton should be restrained from obtaining such information. However, Litton should be permitted to obtain and inspect information which is on the public record concerning the prosecution and trial of any prospective employee, even if the proceeding eventually resulted in an acquittal. Records of arrests which do not result in formal prosecution or trial, are not matters of public record.
>
>      \*      \*      \*
>
> The policy \*    \*    \* is unlawful because it has the foreseeable effect of denying black applicants an equal opportunity for employment. It is unlawful even if it appears, on its face, to be racially neutral and, in its implementation, has not been applied discriminatorily or unfairly as between applicants of different races." (316 F.Supp. 401 at 403.)

*Gregory* was affirmed (472 F.2d 631 (9th Cir. 1972)) on the authority of *Griggs.*

The case of *Carter v. Gallagher* (1971), 452 F.2d 315, which affirmed an order of the lower court that the Minneapolis, Minnesota Civil Service Commission delete any reference to applicant's arrest records from applications for employment with the Minneapolis Fire Department is also in accord with *Gregory.*

■■ The Federal Equal Employment Opportunities Commission, following the district court opinion in *Gregory v. Litton* has found in a number of cases that employers' "no-arrest" hiring policies are racially discriminatory in effect, and not job-related. (See, *e.g.,* EEOC Decision No. 72-1497, CCH Employment Practices Guide, par. 6352; EEOC Decision No. 72-1460, CCH Empl. Prac. Guide, par. 6341; EEOC Decision No. 72-0996, CCH Empl. Prac. Guide, par. 6333; EEOC Decision No. 71-2089, CCH Empl. Prac. Guide, par. 6253; EEOC Decision No. 72-0427, CCH Empl. Prac. Guide, par. 6312; EEOC Decision No. 71-2682, CCH Empl. Prac. Guide, par. 6288.) In the vast majority of these cases, the EEOC merely relied on the nationwide arrest statistics of the FBI's annual "Uniform Crime Reports" for the years 1968, 1969 or 1970 as evidence that arrest record hiring criteria have an inherently discriminatory impact upon black job applicants.

The above cases and decisions of the EEOC persuade this court that the action of the Cairo Board of Fire and Police Commissioners was discriminatory in fact, and in violation of the Illinois Fair Employment Practices Act.

For the foregoing reasons, the judgment of the circuit court of Alexander County is reversed and the order of the Illinois Fair Employment Practices Commission is reinstated.

Judgment reversed.

CREBS, J., concurs.

JONES, J., dissents.