ABEX CORPORATION, AMSCO DIVISION, Plaintiff-Appellee, *v.* THE ILLINOIS FAIR EMPLOYMENT PRACTICES COMMISSION *et al.*, Defendants.—(HARVEY C. JONES, Defendant-Appellant.)

First District (3rd Division)   No. 76-616

Opinion filed June 1, 1977.

Diane C. Geraghty, of Northwestern Legal Assistance Clinic, of Chicago, for appellant.

Winston & Strawn, of Chicago (George B. Christensen and Philip C. Wherry, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Harvey C. Jones filed a charge of an unfair employment practice with the Illinois Fair Employment Practices Commission (FEPC) against Abex Corporation, Amsco Division (Abex) alleging that he had been wrongfully terminated on the basis of race. (Ill. Rev. Stat. 1975, ch. 48, par. 853.) A hearing examiner, finding in favor of Jones, specifically found that Jones was dismissed because an attempt was made to arrest him in Abex's factory on June 18, 1973. The hearing examiner also found that Abex did not intentionally discriminate against Jones. The FEPC affirmed the findings of the hearing examiner. The matter came before the circuit court under the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, pars. 264 *et seq.*). The circuit court reversed the order of the FEPC. Abex in the trial court and on appeal disputes the propriety of the finding of fact that Jones was discharged because of the attempt to arrest and the legal consequences that emanate from the finding. Abex also contends that there is an inconsistency in the ultimate finding of an unfair

employment practice and the finding of the hearing examiner that there was no intentional discrimination.

On May 10, 1973, Harvey Jones was hired by Abex Corporation. Abex manufactures steel castings. As a new employee Jones was on probation for 30 working days. During this probationary period an employee may be terminated for any nondiscriminatory reasons at the discretion of the employer.

Jones was terminated by Abex on his 27th working day, June 18, 1973. The testimony shows that on June 18, 1973, at approximtely 11 o'clock, two officers of the Chicago Heights Police Department arrived at Abex with a warrant for Jones' arrest. Jones was not at work, however, having called in sick earlier that day. Mr. Kenneth Stutzrein, the labor relations manager, noted on Jones' time card "June 18, 1973, 11 a.m., Chicago Heights police has [*sic*] warrant for his arrest. Beat his girlfriend up with a belt buckle, worked for 26 days. Terminated during probationary period. KHS."

Upon termination of any employee, Abex as a matter of course completes a form for its own records indicating the reason for the separation of the employee. The four reasons that may be checked on the form are "lack of ability," "unsatisfactory attendance," "insubordination," and "other." The only box checked was "other" and next to it was typed "personal problems interfered with work." Stutzrein testified that the other three boxes were not checked because the reason for the termination was greater than merely poor attendance. He stated that the supervisor, Edward Casper, directed him to place that reason on the record. Stutzrein also testified that Jones was not terminated for lack of ability. The supervisor makes all decisions to terminate. Casper testified that his decision to terminate Jones on June 18 was not related to the arrest incident but rather his decision was a result of his attendance record, his poor job performance and false reporting of illness.

The evidence of attendance was that on May 29 Jones was absent from work. Stutzrein testified that it was an unexcused absence but admitted on cross-examination that Jones' attendance record indicated that it was an excused absence. On Saturday, June 16, 1973, his record indicated that he was absent without approval. Jones testified that on the 16th he called the company to "report off." The secretary answered the phone. He tried to get his department but was unable to get anyone there. The secretary testified that it is not unusual for her to work on a Saturday but she did not know if she worked Saturday, June 16. On direct examination she stated that she did not have any conversation over the phone or in any other way with Jones on the 16th. On cross-examination she said she was not clear whether Jones called her on that day.

On the termination date, Monday, June 18, 1973, at 8:45 a.m., Jones

telephoned the secretary who recorded a message that Jones reported that he was going to the doctor for a stomach problem. Jones testified that he told her he was sick and that he was going to Dr. Staidelman for his stomach. Jones testified that he went to the doctor's office and attempted to see the doctor but was unable to schedule him that day. Jones paid a bill while in the office, a copy of which was introduced into evidence, and made an appointment for the following day. Stutzrein testified that on June 18 he was notified of the absence of Jones and that between 3:30 and 4:30 p.m., he called the office of Dr. Staidelman and asked if Jones had been a patient that day. The woman who answered the phone replied that he had not been a patient that day. Stutzrein further testified that after he talked to the woman in Dr. Staidelman's office, he related all the information to Casper, Jones' supervisor, and a decision was made to terminate the employment of Jones.

Jones did not work on June 19 but was treated by Dr. Staidelman that day. When he returned to work the following day he was informed by Casper that he had been terminated on June 18. Jones testified that Casper told him he was fired because the police were looking for him. Casper denied making that statement. Jones also testified that "They didn't ever talk to me. They didn't tell me nothing."

On the issue of job performance Casper testified that Jones did not do fill-in work or take initiative on the job. Jones stated that he was never reprimanded for his job performance but on the contrary was praised and given overtime. Under the labor contract overtime must be shared equally by all possible employees.

Additional testimony was presented by Abex from two long-time black employees who stated that they had never experienced or witnessed racial discrimination on the part of their employer. Also, to rebut the defense that he was fired for a poor attendance record, Jones introduced the employment records of nine white employees who had been discharged during their probationary period to show that a more stringent attendance standard was applied to him than to any of the white employees who were discharged. Abex introduced records to show that the percentage of whites and blacks who quit or were terminated during the probationary period was statistically comparable. The FEPC expressly disregarded the employer's records, however, because of clerical errors which the FEPC concluded made them unreliable. Abex challenges the finding of the Commission and asserts that when the errors of the FEPC are corrected they will show that the percentage of whites and blacks discharged is almost identical.

■■ Section 11 of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 274) provides, "The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie

true and correct." The first question before the court is whether the finding of fact that he was terminated because of the attempt arrest was against the manifest weight of the evidence. *Flynn v. Board of Fire & Police Commissioners* (1975), 33 Ill. App. 3d 394, 342 N.E.2d 298.

■■ The evidence of why Jones' employment was terminated is in some dispute. Casper specifically said that the decision to terminate Jones was not related to the arrest incident but was a result of his attendance record and his poor job performance. Jones stated that Casper stated to him that the attempt to arrest was the reason for his termination. Casper denied making the statement. Stutzrein testified that Casper told him to place on the employment record that the reason to terminate was "personal problems interfered with work." The notation on the employment record concerning personal problems does not coincide with what Casper testified were the reasons for termination, that is, his attendance record and poor job performance. Further, Jones' time card specifically notes the attempt to arrest Jones on the date of his termination and the fact that he was terminated. Neither the employment record nor the time card indicate performance problems although Casper testified, as was indicated earlier, that there were performance problems. Stutzrein at one point testified that Jones was not terminated because of lack of ability, although, in apparent conflict with Casper who testified that Jones' job performance was poor. A resolution of the conflicting testimony and documentary evidence rests with the trier of fact. (*Petraitis v. Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 864, 335 N.E.2d 126.) Under the evidence here we cannot say that the finding of the trier of fact that Jones was terminated because of the attempt to arrest him was against the manifest weight of the evidence.

■■ So the question becomes, what legal conclusion may be drawn from the fact that Jones was terminated because of the attempt arrest? Before dealing directly with that question, however, we must address ourselves to the allied issue of lack of intent to discriminate. The hearing examiner found, and the FEPC affirmed the finding, that Abex did not intentionally discriminate against Jones. In *Griggs v. Duke Power Co.* (1971), 401 U.S. 424, 28 L. Ed. 2d 158, 91 S. Ct. 849, the United States Supreme Court said the consequences of an employment policy can cause it to be an unfair employment practice regardless of the intent or motive of the employer. In *City of Cairo v. Fair Employment Practices Com.* (1974), 21 Ill. App. 3d 358, 315 N.E.2d 344, an applicant was not considered for a position as a policeman because of his arrest record. The policy of the City of Cairo of excluding applicants because of an arrest record was applied uniformly to black and white applicants. The court commented that the intent of the Illinois legislature was that the statute was not limited to racially motivated employment discrimination, rather

it was intended to apply where employment practices discriminate racially as a matter of fact. Abex argues that the finding that Abex did not intentionally discriminate and the finding of an unfair employment practice is contradictory. Based on *Griggs* and *City of Cairo* we do not believe so.

In dealing with the principal question of what legal conclusion may be drawn from the finding that Jones was terminated because of the attempt to arrest, Jones cites *City of Cairo*. That case relied on *Gregory v. Litton Systems, Inc.* (C.D. Cal 1970), 316 F. Supp. 401, *affirmed and modified on other grounds* (9th Cir. 1972), 472 F.2d 631. In *Gregory* the plaintiff applied for employment with Litton. He was offered a position and accepted the offer. The offer was withdrawn, however, when the employer found he had been arrested on 14 different occasions. He had never been convicted on any criminal offense. The employer had a standard policy of not hiring applicants who had been arrested "on a number of occasions." The district court found that the policy was objectively applied without reference to race, sex, religion, color or national origin. The court also found blacks are arrested substantially more frequently than whites in proportion to their numbers, therefore, any policy that does disqualify prospective employees because of having been arrested once or more than once discriminates in fact against black applicants. That discrimination exists even though such a policy is objectively and fairly applied between applicants of various races. The court concluded that the policy was unlawful because it had the effect of denying black applicants an equal opportunity for employment. On the basis of *Gregory* the court in *City of Cairo* concluded that the acts of the Cairo Board of Fire and Police Commissioners were discriminatory and a violation of the Illinois Fair Employment Practices Act.

■■ Abex, in attempting to distinguish the *City of Cairo* from the present case, seeks to draw three distinctions. First, it says that an attempted arrest should be distinguished from an attempted arrest in the factory since, it argues, that a very small portion of arrests are made or attempted in factories it follows that there is no evidence that the taking of factory arrests into consideration in employment decisions has a greater impact upon blacks than whites. Secondly, it argues that both *Gregory* and *City of Cairo* are based on the theory that prior arrest records are not necessarily related to potential job performance. Abex notes that in the instant case the police came into the plant disrupting the normal process of work in an attempt to arrest the individual. Thirdly, Abex points out that in the matter under consideration there was no arrest record whatsoever. We fail to see the distinctions and believe that the *City of Cairo* case is controlling here. Underlying all three attempted distinctions is the fact in the instant case that the decision here was made

on the basis of an attempt to arrest. In our opinion there is no essential difference between the reasoning in *Gregory* and *City of Cairo* which concern themselves with arrest records and an attempt to arrest. The decision to terminate based on the attempt to arrest was, though not intentional, discriminatory.

Abex argues that the Commission ruling substantially destroys the value of the 30-day probationary period in labor contracts. The only effect we see on the probationary period is that the employer may not discharge an employee during the probationary period on a discriminatory basis. The ruling in this case is predicated on the finding that the dismissal was caused by the attempt to arrest which we find discriminatory.

The judgment of the circuit court of Cook County is reversed.

Reversed.

McNAMARA and McGILLICUDDY, JJ., concur.