MONTGOMERY WARD & CO., INCORPORATED, Plaintiff-Appellee, *v.* FAIR EMPLOYMENT PRACTICES COMMISSION, Defendant.—(JOHNNIE MONROE, Defendant-Appellant.)

First District (1st Division)   No. 76-1139

Opinion filed May 2, 1977.—Supplemental opinion filed on denial of rehearing July 11, 1977.

Diane C. Geraghty, of Northwestern Legal Assistance Clinic, and Mark Epstein and Irwin Kesselman, both of Epstein & Kesselman, of Chicago, for appellant.

Christopher J. Michas, of Chicago, for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

This employment dispute brings an unusual set of facts before us involving an employee of Montgomery Ward & Co., Incorporated (plaintiff). The culmination of the situation came when the circuit court affirmed in part and reversed in part a legal determination made by the Fair Employment Practices Commission (Commission). This appeal by Johnnie Monroe (defendant) followed. For a more complete understanding of the actions taken by the Commission and by the trial court, we will summarize the pertinent facts.

Plaintiff operates a large commercial building in Chicago. On October 16, 1969, defendant was employed in the supply room. On the afternoon of June 15, 1972, Duane Miller, employed by plaintiff for 18 years and a supervisor of a department in the building, saw two black men on the second floor walking down an aisle toward a staircase. They were carrying two projectors which Miller recognized as equipment from his department. He asked the men where they had obtained the merchandise and they replied that it came up from the first floor. At that time he was about 4 feet from the men. When he repeated the question, they laughed and ran away. Miller later identified defendant as one of these men. He had never seen defendant before.

Miller and the department manager chased these men without result. Miller notified his own supervisor and a search was instituted. It started at the top floor of the building and systematically covered each floor. Miller encountered the defendant on the fourth floor and identified him as one of the alleged thieves. This was based on the fact that defendant was wearing a pair of dark pants and a light cream colored shirt with a red checkered pattern. Security guards of plaintiff took defendant into custody. Defendant denied his guilt. The guards transferred defendant to the custody of the Chicago Police Department. He was arrested and charged with theft.

On June 16, 1972, defendant came to work and was discharged. Pursuant to company procedure uniformly applied to all terminated employees, a "Termination Interview Check Sheet" was completed and placed in defendant's file. It bore a company code in numerals indicating discharge for theft. An entry was made to indicate that defendant would not be rehired. This was in accordance with plaintiff's employment

policy. Plaintiff has no provision for reconsideration of this type of discharge.

In due course, the criminal charges against defendant were brought to trial. On November 3, 1972, he was acquitted. On November 10, 1972, defendant went to plaintiff's personnel office. He told a clerk the circumstances of his discharge and requested reemployment. The clerk informed him that he could not be rehired. The evidence showed that it is plaintiff's uniform policy not to rehire any person terminated for theft. For the past 12 years plaintiff has never reviewed the termination of an employee for theft.

On December 26, 1972, defendant filed a charge of unfair employment practice against plaintiff with the Commission. He alleged that he had been denied reemployment after his acquittal. He had been told that company policy prevented his rehiring; but he believed that he was denied reemployment "because I am Black and had been accused and arrested falsely." The charge also set forth that the entire process of discharge was racially biased in that defendant would not have been terminated if plaintiff had considered the testimony of three black witnesses instead of choosing "to abide by the information given them by a white employee who had mistaken me for another employee who had committed the theft." Defendant prayed reinstatement, back wages, benefits, seniority and cessation of all unfair employment practices.

Considerable testimony was heard by a hearing examiner of the Commission. Duane Miller, a supervisor employed by plaintiff, testified concerning his knowledge of the alleged theft as above summarized. William Browder, employed by plaintiff for 8½ years, saw two black men get some bags from a shelf on the third floor and then rush past him going downstairs. The men were from 1 to 5 feet away from him. He saw them go down the stairs. He entered the elevator and went down to the first floor. There he saw one of the men again. This man, who was not carrying anything, ran toward the basement. The witness had seen defendant often; sometimes twice a day. He was absolutely certain that defendant was not one of these two persons. About 1 minute later, he saw the supervisor, Duane Miller, and pointed out to him the direction in which one of the men had gone. When this witness learned that defendant had been charged with theft, he went to the supervisor of his own department and told him that the wrong man had been accused of stealing.

Harold Nurse, plaintiff's employee for 4 years, was working on the first floor of the building on the date in question. He told his supervisor that he had seen an apparently suspicious person walking around the floor. The witness had known defendant for about a year and a half. He was certain that defendant was not the suspicious person he had previously seen. He

expressed this opinion to his supervisor, Pervis Balthazar, shortly after defendant had been charged with theft.

Jackson Turner, plaintiff's employee for about 15 years, worked as an elevator operator. He saw a man that he knew as an employee of plaintiff running down from the first floor. He took his elevator down to the first floor. He saw the man come down and run away. He then saw the supervisor, Pervis Balthazar, who told him to continue watching for the man. The man he saw was not defendant. Later the witness told "protection", apparently the security officers, that the man he saw was not defendant. The next day he repeated this in the protection office in the presence of William Browder, Harold Nurse and Pervis Balthazar.

Richard Kempf, an employee of plaintiff for some 3 years, worked in the same general area as defendant. On the day in question he and defendant were working in the same department from about 2:20 until 3:40 p.m. He testified that if defendant had been a short order filler that day, it would have been impossible for him to have seen defendant all the time. Defendant first testified that he worked as a packer on the date in question but later testified that on the afternoon that day between 3 and 4 o'clock he was filling short orders.

The record shows that the supervisor, Duane Miller, is Caucasian. Defendant and all of the four witnesses are persons of African ancestry.

The examiner filed a recommended order and decision on September 3, 1974. This order stated the facts and the contentions of the parties. The order stated that the crucial issue was the propriety of plaintiff's policy regarding the rehiring of terminated employees. The examiner concluded that the conduct of plaintiff in denying defendant reinstatment, because of the use of documentation pertaining to a prior arrest and in spite of his prior acquittal, was a violation of section 3 of the Fair Employment Practices Act. (Ill. Rev. Stat. 1975, ch. 48, par. 853.) The examiner held that the good intentions of an employer are not as important as the effect of their employment rules and that the refusal of the plaintiff to rehire defendant after his acquittal was unlawfully predicated upon the record and fact of his arrest.

The examiner also held that it was the duty of the plaintiff to reevaluate the original termination after it obtained knowledge of defendant's acquittal and that this conduct of plaintiff left a permanent taint on defendant's record. The examiner did not specifically find that the original discharge of defendant was discriminatory and a violation of law. However, the examiner did find that the original charges were made without adequate supporting evidence and that these charges were used to deny defendant employment even though they had been tested by the judicial process. In this regard he pointed out that plaintiff found defendant guilty of theft within "one hour after a cursory investigation,

and sentenced him to unemployment and the poverty and humiliation which accompanies it."

The examiner accordingly recommended that defendant be reimbursed for wages lost since November 10, 1972, the date of the acquittal. Defendant was denied reimbursement for the preceding period of June 16, 1972 through November 10, 1972, "because the Hearing Examiner finds that this period of time is not appropriately at issue." The examiner made no provision for reduction of the amount of this award by defendant's actual earnings during the period.

On plaintiff's request the Commission granted review and oral argument. On March 24, 1975, the Commission filed a complete order and decision. The decision summarized the pertinent evidence commencing with the original termination and the attempt of defendant to be rehired. In its decision, the Commission pointed out that the only evidence linking defendant to the alleged theft was his identification by Duane Miller. Plaintiff was aware that other employees had seen Miller pursuing one or two men immediately following the theft and these additional witnesses had told plaintiff's officials that defendant was not one of those men. In addition, defendant had continuously protested his innocence.

The Commission pointed out that plaintiff had failed to explain why it had ignored this evidence and chose instead to believe Duane Miller who had never seen or known defendant before the incident. However, the Commission concluded, as a matter of law, that defendant was barred from raising the question of a discriminatory discharge because he failed to file his charge with the Commission within the limitation period of 180 days following the alleged discriminatory act as required by law. (Ill. Rev. Stat. 1975, ch. 48, par. 858.) The Commission concluded that it "need not decide whether Complainant [defendant] was discriminated against because of his race when he was terminated."

However, the Commission went on to state agreement with the ruling of the hearing examiner that the subsequent refusal of plaintiff to accept defendant's application for reemployment was an unfair employment practice. The Commission held that the failure of plaintiff to reevaluate defendant's employment record in the light of his acquittal "had the effect of putting a permanent taint" on defendant's employment record. The Commission compared this to a record of an arrest which plaintiff may have learned from another source. The Commission pointed out that this conduct by plaintiff precluded defendant from finding employment because of his discharge for theft "which implies actual guilt, even though the evidence overwhelmingly indicates that he is innocent." In the absence of evidence of similar treatment of Caucasian employees, the Commission declined to surmise that such employees would have received the same unfair treatment. The Commission found no legitimate

reason to support the termination of defendant for theft. The Commission therefore affirmed the result reached by the hearing examiner except that the Commission required that actual earnings of defendant be credited against the amount of the back pay order.

Plaintiff sought administrative review. (Ill. Rev. Stat. 1975, ch. 110, par. 274.) After a full hearing, the trial court entered an order containing two separate directives:

(1) The trial court agreed with the ruling of the Commission as a matter of law that the Commission had no jurisdiction to consider the initial discharge of defendant by plaintiff.

(2) The determination of the Commission that plaintiff discriminated against defendant by failing to rehire him was contrary to law.

The trial court accordingly reversed the order and decision of the Commission.

In this court, defendant contends that the Commission had jurisdiction over defendant's original discharge and that the decision of the Commission regarding the refusal of plaintiff to rehire defendant was not contrary to law. Plaintiff responds with the contention that the initial discharge of defendant was barred by limitations and was not continuing in nature so that the Commission had no jurisdiction to consider it and plaintiff did not discriminate against defendant by its refusal to rehire him.

■■ Under the Administrative Review Act, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." (Ill. Rev. Stat. 1975, ch. 110, par. 274.) The courts of Illinois have continuously and uniformly "construed this provision to limit the function of the reviewing court to ascertaining whether the findings and decisions of the administrative agency are against the manifest weight of the evidence." See *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713, *cert. denied*, 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229, and cases there cited.

■■ As above shown, the hearing examiner and the Commission found and reached the factual conclusion that the initial discharge of defendant and also the subsequent refusal of plaintiff to rehire defendant after his acquittal were discriminatory and unfair and accordingly required redress under the provisions of the Fair Employment Practices Act. Upon examination of the record in accordance with the guidelines above expressed, we find that these conclusions are strongly supported by the manifest weight of the evidence. The trial court reached no factual conclusion differing from that of the Commission but decided as a matter of law that the Commission lacked jurisdiction to consider the initial discharge and that the result reached by the Commission regarding

plaintiff's subsequent failure to rehire defendant "was contrary to the law." Consequently, our final disposition of this case resolves itself into an issue of law.

In deciding this issue an excellent point of commencement is *City of Cairo v. Fair Employment Practices Com.* (1974), 21 Ill. App. 3d 358, 315 N.E.2d 344. That case involved a decision by the Commission finding that the city policy of excluding persons with arrest records from employment on its police force was a racially discriminatory hiring practice. On reversal by the circuit court, this court (Fifth District) reversed the trial court and affirmed the result reached by the Commission. In *City of Cairo*, as in the case before us, the examiner, the Commission and the circuit court agreed upon the facts but disagreed as to the governing legal principles. (21 Ill. App. 3d 358, 363.) In that case, the trial court relied upon the fact that the policy was uniformly applied to all applicants and reasoned that therefore it was not racially discriminatory. This court cited *Griggs v. Duke Power Co.* (1971), 401 U.S. 424, 28 L. Ed. 2d 158, 91 S. Ct. 849, where the Supreme Court held that the absence of discriminatory intent and the motivation behind the policy are not as important as the consequences of the employment policies in question. This court concluded upon *Griggs* and other authorities that a policy of refusing to hire because of past arrests was racially discriminatory in its practial effect.

In our opinion, this same principle is applicable throughout the entire chain of events pertinent here, from the initial discharge of defendant to and including the refusal of plaintiff to rehire him after acquittal. In both of these instances, plaintiff followed rules which it has uniformly applied to all of its employees. This would have application to the discharge of employees for theft and the refusal to rehire at a later date because of the antecedent theft. In our opinion, it is legally impermissible and intellectually impossible to sever and give separate attention to these two important events as did the hearing officer, the Commission and the trial court. The original termination and the subsequent refusal to rehire are firmly bound together.

■■ We agree with the examiner and the Commission that the initial discharge of defendant was racially discriminatory. Plaintiff's conduct in causing the arrest and then the termination of defendant were based solely upon the identification of one person which was strongly denied not only by defendant but by at least three other employees. Thereafter, when the matter was tried and these witnesses testified and defendant was acquitted, the discriminatory nature of the original termination was renewed and magnified. When defendant applied for reemployment, it was the duty of plaintiff to reevaluate its own records in the light of the

acquittal. Failure to do so amounted to discrimination against defendant which, in effect, dated back to and accentuated the original discriminatory act of termination.

There is a limitation period of 180 days for filing of a charge after the occurrence of an unfair employment practice. (Ill. Rev. Stat. 1975, ch. 48, par. 858.) It will be recalled that defendant was terminated on June 16, 1972, was acquitted November 10, 1972, and filed his charge on December 26, 1972. Thus the filing of the charge occurred more than 180 days after the initial termination but less than that period of time after denial of reemployment by plaintiff. It is true that the acquittal of defendant in criminal proceedings was based upon the reasonable doubt quantum of evidence. Furthermore, the proceedings in the criminal court have no direct legal effect upon plaintiff or upon the employment relationship.

However, commencing from the date of the initial discharge, and until the acquittal, it would have been a useless and futile act for defendant to attempt to secure his reinstatement. As a practical matter, it would seem that conviction of defendant in the criminal proceedings would have prevented his reemployment. This was effectively changed by the acquittal on November 3, 1972. One week later, on November 10, 1972, defendant requested re-employment.

■■ It would seem only fair and legally proper that the period of 180 days should begin to run from November 10, 1972, the date of denial of reinstatement which was, in effect, the completion of the indivisible events which occurred with reference to the employment itself. This conclusion is supported by the general legal principle that a statute of limitations begins to run from the time a plaintiff has a remedy, in pursuit of which he can have all the relief to which he is entitled. See 25 Ill. L. & Prac. *Limitations* §51, at 218 (1956).

There is judicial authority in support of the proposition that an initial act of discrimination may have continuing results and that in such cases the limitation period should not be calculated from the date of the initial act. Plaintiff cites cases such as *Laffey v. Northwest Airlines* (D.C. Cir. 1976), 13 FEP Cases 1068, in which the statement is made that a severing of the employment relationship ordinarily activates the limitation period for the filing of charges. However, in *Laffey* the court dealt only with the single act of termination. This is entirely different than the case before us where the pertinent events include not only the act of termination but the subsequent refusal to rehire.

The cases cited by defendant convince us that in the instant case the result of the initial discrimination was continuing and culminated only with the refusal to rehire. The earlier of these two authorities is *Franks v. Bowman Transportation Co.* (1975), 424 U.S. 747, 47 L. Ed. 2d 444, 96 S.

Ct. 1251. The court there construed an initial discriminatory refusal of employment as operating continuously in view of the fact that the rejected employee would never obtain his rightful place in accordance with seniority principles applied by the employer.

The other case is *Evans v. United Air Lines, Inc.* (7th Cir. 1976), 534 F.2d 1247. In *Evans*, the employer maintained a rule which disqualified a married woman from continuing as a stewardess. Plaintiff resigned involuntarily because of this rule. Some 10 months later the policy was reversed and some 3 years thereafter plaintiff was hired as a new employee. She filed a charge of discrimination with the Federal Equal Employment Opportunities Commission 5 years after her termination and 4 years after the no-marriage rule had been withdrawn; despite the applicable Federal limitation period of 90 days. The district court held that there was no continuing violation and dismissed the charge. The United States Court of Appeals for the Seventh Circuit first affirmed the dismissal. While petitions for rehearing were pending, the Supreme Court decided *Franks*. Following the theory of *Franks*, the court of appeals then granted rehearing and reversed the ruling of the district court. The court held that the limitations bar was not operative in view of the continuous effect of the original discrimination.

■■ Particularly in view of similarities between the Illinois and Federal fair employment enactments, we believe that Federal experience in this field "can serve as a useful guide" in the case at bar. *People v. Crawford Distributing Co.* (1972), 53 Ill. 2d 332, 339, 291 N.E.2d 648.

■■ The parties agree that three elements are required for a finding of continual violation:

(1) Showing that the employee was an actual victim of the discriminatory act.

(2) This discrimination placed the employee in an inferior status due to subsequent application of an employment policy such as seniority, and

(3) That the effects of the past discrimination continued at least to a date within the limitation period before the filing of the charge.

In the case before us, the Commission ruled that the initial discharge of defendant was the result of racial discrimination. This fact appears clearly from all of the evidence regarding the original discharge and from the findings of the Commission. It seems apparent that, as a result of this discharge, defendant was deprived of valuable rights consisting not only of seniority and other benefits such as vacation but, most seriously, he was denied his right to reinstatement because of a policy, apparently uniformly applied, prohibiting rehiring because of discharge for theft. In addition, the effect of this initial discharge continued when he was denied reinstatement after acquittal on a date within the statutory limitation period for filing of his charge.

Common sense and logic compel the above result. The factual background of defendant's complaint of unfair labor practice cannot be fragmented or considered in segments. It must be viewed as one cohesive and indivisible unit. Defendant's cause of action was not complete and ripe for adjudication until his acquittal on the criminal charges and the subsequent refusal of plaintiff to rehire him. The limitation period necessarily could not commence to run until these events had all become finalized.

The judgment appealed from is reversed and the cause is remanded with directions that the circuit court in turn remand the cause to the Commission with directions that defendant be granted proper relief commencing as of June 16, 1972, subject to wage credit for earnings as provided by the Commission.

Reversed and remanded with directions.

O'CONNOR, and BUA, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Plaintiff's petition for rehearing raises nine points upon which we will comment as follows.

Plaintiff first contends that this court has overlooked the legal requirement that the factual conclusions of the Commission be supported simply by a preponderance of the evidence rather than judged by the manifest weight principle. Ill. Rev. Stat. 1975, ch. 48, par. 858.01(c).

In reviewing a determination by the Commission, the responsibility of this court is twofold. First, we must ascertain whether the Commission applied the proper test of "a preponderance of the evidence" as required by the statute which plaintiff cites. Second, we must then determine whether the agency's determinations are contrary to the manifest weight of the evidence. This point is most clearly made in *General Electric Co. v. Fair Employment Practices Com.* (1976), 38 Ill. App. 3d 967, 977, 349 N.E.2d 553, *appeal denied* (1976), 63 Ill. 2d 556. Our opinion discharges this responsibility from both points of view.

As a basis for the second, third, seventh and eighth contentions in the petition, plaintiff urges that the Commission never reached the factual conclusion that the initial termination of defendant Monroe was discriminatory or that plaintiff's failure to rehire him was an act of discrimination. In its opinion, the Commission noted that, due to the legal issue of the statute of limitations, it was not required to enter a finding as

to whether the initial termination of defendant was racially discriminatory. However, the language used by the Commission in its discussion of the facts demonstrates strongly that it believed the evidence showed that defendant's discharge was discriminatory. Pertinent portions of the Commission's decision read as follows:

> "The record reveals that, at the time of the alleged theft, Miller's identification was the only evidence linking Complainant [defendant] to the incident. Respondent [plaintiff] was aware that a number of employees had witnessed Miller pursuing one or two men through the building immediately following the theft. These men, who had known Complainant [defendant] by sight prior to the incident, told Respondent's [plaintiff's] officials that Complainant [defendant] was not one of the men pursued. Moreover, another employee had told his supervisor that Complainant [defendant] was at his work station during the time the theft occurred. In addition, Complainant [defendant] himself had continuously protested his innocence. Respondent [plaintiff] has not proffered any evidence to explain why this evidence was ignored in its decision to terminate Complainant [defendant]. Against the statements of all these employees, Respondent [plaintiff] chose to believe Duane Miller, who had never seen or known Complainant [defendant] prior to this incident."

The Commission further stated flatly that it rejected the contention that plaintiff's rehiring policy was uniform and nondiscriminatory:

> "Respondent [plaintiff] has not shown any evidence of white employees who have been terminated for theft, later acquitted, and subsequently refused re-employment. The Hearing Examiner found, and we agree, that in view of the circumstances surrounding both Complainant's [defendant's] termination and his subsequent acquittal, Respondent [plaintiff] should have at least reevaluated the termination. In the absence of any evidence to the contrary, we decline to surmise that white employees have received the same treatment."

Finally, the Commission noted specifically that "the Hearing Examiner and the Commission have reviewed the evidence and merely find that, using our standard of proof, there was no legitimate reason to support Complainant's [defendant's] termination for theft." These portions of the Commission's opinion establish that although the Commission believed it not necessary to make a formal finding of discrimination because of the legal issue of the statute of limitations, it definitely reached the conclusion that the facts adduced in the hearing were sufficient to substantiate the defendant's charge of discrimination. We find that the second, third, seventh and eighth points raised in the petition are without merit.

In the fourth point, plaintiff argues that termination of an employee is not considered a continuing violation so as to toll the limitations period. The cases cited by plaintiff, such as *Collins v. United Air Lines, Inc.* (9th Cir. 1975), 514 F.2d 594, are factually distinguishable from the case at bar. In *Collins,* an airline stewardess was required to resign because of marriage. Some four years later, she filed a charge of discrimination. Dismissal of the charge by the Federal commission was affirmed by the court of appeals. In that factual context, the aggrieved individual could have filed a complaint immediately upon termination. Quite to the contrary, in the instant case it would have been futile for defendant to have attempted to secure his reinstatement while the theft charge was still pending against him. Furthermore, as we noted in our opinion, we are not dealing with a single act of discriminatory termination here but with a continuing course of discrimination which ended only with the refusal of plaintiff to rehire defendant. In addition, the cases cited by plaintiff for this proposition were decided prior to the decisions in *Franks v. Bowman Transportation Co.* (1975), 424 U.S. 747, 47 L. Ed. 2d 444, 96 S. Ct. 1251, and *Evans v. United Air Lines, Inc.* (7th Cir. 1976), 534 F.2d 1247. We reject plaintiff's fourth contention.

With regard to the fifth issue raised in the petition, we refer to *City of Cairo v. Fair Employment Practices Com.* (1974), 21 Ill. App. 3d 358, 315 N.E.2d 344. While plaintiff argues that we cannot impose upon a potential employer the duty of reevaluation of its own records, we noted in *Cairo* that exclusion of an individual from employment due to a past arrest record is inherently discriminatory. This principle is equally applicable to a former employer who is also a potential future employer.

In the sixth point, plaintiff objects to our statement of the general principle that a statute of limitations begins to run from the time the plaintiff's remedy ripens. That time-honored principle was stated years ago in *Parmelee v. Price* (1902), 105 Ill. App. 271, 281, *aff'd,* 208 Ill. 544, 70 N.E. 725. Furthermore, as this is a situation in which there was a continuing violation of defendant's rights, the statute of limitations should not begin to run until the date of the last injury. See *City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill. App. 3d 359, 364, 300 N.E.2d 331.

Our opinion is itself a refutation of plaintiff's ninth point stating that we "overlooked and failed to closely consider the inconsistent and confused testimony * · * *" that defendant was not guilty of the alleged theft. The factual conclusions reached by us are identical to those of the hearing examiner and the Commission.

While this supplemental opinion was being written, plaintiff filed herein, with our permission, a copy of an opinion of the United States Supreme Court (*United Air Lines, Inc. v. Evans* (1977), ___ U.S. ___, ___ L. Ed. 2d ___, 97 S. Ct. 1885), reversing the decision of the Court of

Appeals in *Evans*, 534 F.2d 1247. As directed by this court, defendant filed responding comments upon this decision. As we view this situation, the decision of the United States Supreme Court does not require modification of the result reached in our original opinion.

The Supreme Court concluded that "such a challenge to a neutral system [seniority] may not be predicated on the mere fact that a past event which has no present legal significance has affected the calculation of seniority credit." (\_\_ U.S. \_\_, \_\_, \_\_ L. Ed. 2d \_\_, \_\_, 97 S. Ct. 1885, 1890.) This statement has reference to the original discharge of the employee regarding which she took no action for a time period far in excess of the statutory limitation. In the instant case we are dealing with an initial discriminatory discharge, followed by a discriminatory refusal to rehire and the institution of legal action well within the limitation period following the final event.

As we pointed out in our original opinion, the factual background of the case at bar "cannot be fragmented or considered in segments. It must be viewed as one cohesive and indivisible unit." The statute of limitations could not and did not commence to run until the matter was finalized by the plaintiff's refusal to rehire. The petition was filed well within the limitation period.

The petition for rehearing is denied.

O'CONNOR and BUA, JJ., concur.